1  Daniel Hume (admitted *pro hac vice*)
   dhume@kmllp.com
2  David Kovel (admitted *pro hac vice*)
   dkovel@kmllp.com
3  Beverly Tse (SBN 237240)
   btse@kmllp.com
4  **KIRBY McINERNEY LLP**
   825 Third Avenue, 16th Floor
5  New York, New York 10022
   Telephone: (212) 371-6600
6  Facsimile: (212) 751-2540

7  Attorneys for Plaintiffs and
   Co-Lead Counsel for the Certified Plaintiff Class

8

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 7 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

_____ Priority
_____ Send
_____ Clsd
_____ Enter
__X__ JS-5/JS-6
_____ JS-2/JS-3

9

10                **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: | MDL Case No. 05-1671 CAS (VBKx) |
| REFORMULATED GASOLINE (RFG) ANTITRUST & PATENT LITIGATION, | The Honorable Christina A. Snyder |
| | **Class Action** |
| This document relates to: ALL ACTIONS | [~~PROPOSED~~] **ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Appearance Date: November 24, 2008 |
| | Time: 10:00 a.m. |
| | Courtroom: 5 |

CV04-8795-CAS(VBKx); CV05-0309-CAS(VBKx); CV05-1264-CAS(VBKx);
CV05-3438-CAS(VBKx); CV05-3439-CAS(VBKx); CV05-3441-CAS(VBKx);
CV05-3445-CAS(VBKx); CV05-3446-CAS(VBKx); CV05-3577-CAS(VBKx)

1  WHEREAS, this action is pending before this Court as a class action; and

2  WHEREAS, the Court, having fully read and considered the Motion For
3  Final Approval Of Settlement, supporting Points And Authorities, supporting
4  Declarations, and the Stipulation of Settlement (the "Stipulation" or "Settlement"),
5  which, together with the exhibits annexed thereto, sets forth the terms and
6  conditions for a proposed settlement and dismissal of the Federal and State Court
7  Actions (as defined in the Settlement) with prejudice upon the terms and
8  conditions set forth therein;

9  WHEREAS, the Court held a fairness hearing on the Settlement on
10 November 24, 2008, at which the Court heard argument from the parties and any
11 objectors who complied with the conditions set forth in the Class Notice;

12 WHEREAS, the Court has carefully reviewed and considered all objections
13 submitted to the proposed Settlement, copies of which are attached hereto
14 collectively as Exhibit A;

15 THE    COURT    HEREBY    MAKES    THE    FOLLOWING
16 DETERMINATIONS AND ORDERS:

17 1.    This Order incorporates by reference the definitions in the Stipulation,
18 and all terms defined therein shall have the same meaning in this Order as set forth
19 in the Stipulation.

20 2.    Notice has been provided to the Class pursuant to the Notice Plan
21 approved by the Court in its Preliminary Approval Order.

22 3.    The Court finds that the Settlement filed and incorporated herein by
23 this reference and made a part of this Order of Final Approval, is fair, adequate and
24 reasonable to Class Members when balanced against the probable outcome of
25 further litigation relating to liability and damages issues and potential appeals of
26 rulings; that significant discovery, investigation, research, and litigation has been
27 conducted such that counsel for the parties at this time are able to reasonably

28

evaluate their respective positions; that settlement at this time will avoid substantial costs, delay and risks that would be presented by the further prosecution of the litigation; that the proposed Settlement has been reached as a result of intensive, serious and non-collusive negotiations between the parties. Accordingly, good cause appearing, the Motion For Final Approval Of Settlement is hereby GRANTED.

4. Consistent with the Court's Order of March 27, 2007 and the definitions provided in the Stipulation, the term "Class" means: "All consumers who purchased CARB-Compliant summertime reformulated gasoline in the State of California at any time during the period from January 1995 to and including August 11, 2005. Excluded from the class are governmental entities, defendants, their [alleged] co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, and any and all judges and justices assigned to hear any aspect of this litigation." Further, the term "Class Members" includes each and every member of the Class who has not timely and validly elected to be excluded from the Class.

5. The Settlement is not a concession or admission, and shall not be used against Defendant or any of the Released Parties as an admission or indication with respect to any claim of any fault or omission by Defendant or any of the Released Parties. Neither the Settlement, nor any document, statement, proceeding or conduct related to the Settlement, nor any reports or accounts thereof, shall in any event be:

a. Construed as, offered or admitted in evidence as, received as or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by Defendant or any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or

b.  Disclosed, referred to, or offered or received in evidence against any the Released Parties in any further proceeding in the Action, or in any other civil, criminal or administrative action or proceeding, except for purposes of settling the Federal Court Action and State Court Action pursuant to the Stipulation.

6.  As of the date this Order is signed, all dates and deadlines associated with the Federal Court Action shall be stayed, other than those related to the administration of the Settlement of the action.

7.  In the event the Settlement does not become effective in accordance with the terms of the Stipulation, or the Settlement is terminated, canceled, or fails to become effective for any reason, this Order shall be rendered null and void and shall be vacated, and the parties shall revert to their respective positions as of before entering into the Stipulation.

8.  Upon due consideration of the objections collectively attached hereto as Exhibit A, the objections are denied.

9.  This Final Order shall be fully binding with respect to all Class Members who did not request exclusion in accordance with the terms of the Settlement.

10.  The Court retains jurisdiction (a) to revise and/or implement the proposed cy pres plan of allocation as is reasonably necessary to achieve a fuel or clean air benefit; and (b) to consider all further applications arising out of or connected with the proposed settlement.

**IT IS SO ORDERED.**

Dated: 12/17/08

*Christina A. Snyder*

HON. CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

**EXHIBIT A (Part 1 of 3)**



Gary Joseph Bonas II
26255 Bungalow Court
Valencia, California 91355

November 06, 2008

Judge Christina A. Snyder                    c:    Anthony "Bud" Rock
Att. Clerk of the Court                            Oldaker, **Biden** & Belair, LLP
Central District of California                     818 Connecticut Avenue N.W.
312 N. Spring St.                                  Suite 1100
Los Angeles, CA 90012                              Washington, DC 20006

<u>Re: In Re Reformulated Gasoline (RFG, MDL Case No. 05-1671 CAS (VBKx)</u>

Dear honorable Justice Snyder & Clerks:

I write in response to your formal published procedure in connection with the above class action as a class member. Specifically, the case notice you approved reads in key part:

A)    The ... action claims that [David J. O'Reilly/**Chevron's adopted by M/A**] **Unocal** unlawfully **manipulated [up & down over competitive levels]** the California gasoline market for summertime <u>reformulated ...</u> gas prices;

B)    On November <u>24</u>, 2008, at 10:00 am, a Fairness Hearing will be held; &

C)    To object <u>you must</u> send a written objection on or before November 7, 2008 to:

          • <u>Clerk of the Court, District Court for the Central District of California, located at 312 N. Spring St., Los Angeles, CA 90012</u>
          • <u>All attorneys listed in Q... 13.</u>

The objection must include:

a)    <u>Your name, address, and telephone number;</u>

b)    <u>The name of this Litigation</u> (*In Re Reformulated Gasoline (RFG) Antitrust & Patent Litigation*, MDL Case No. 05-1671 CAS (VBKx));

c)    The approximate **date when** you purchased a <u>CARB-compliant summertime reformulated gas in the State of California;</u> &

d)    <u>Your objection and supporting arguments.</u>

Enclosed is the <u>invited objection and supporting arguments</u>, or, should it be denied (post appeal), and in the alternative, our formal opt out notice. As an introduction to the enclosed we present this 9th Circuit statement relating to the universal <u>economic contract truism</u>: "[T]he Sherman Law [nor any expert or case opinion] ... <u>repeals economic laws</u> [like the kinked demand curve and <u>correct price protocol</u> proof]."[1]

Respectfully,
http://boneslaw.spaces.live.com/default.aspx
Gary Joseph Bonas II

---

[1] <u>In Re: Petroleum Litigation</u>, 656 F. Supp. 1296, 1304 (1986). More details are posted at the above sig lined link.





### Introduction

First, as a basis for standing to appear in the present matter, the honorable court instructed to furnish the following four pieces of information

A)   <u>The Litigation</u>

     *In Re Reformulated Gasoline (RFG) Antitrust & Patent Litigation,* MDL Case No. 05-1671 CAS (VBKx)

B)   <u>My Purchase Of The Litigation Commodity Subject (Standing)</u>

During the relevant period, 1995 – 2005, with <u>a four year summer exception</u> (2001, 2002, 2003 & 2005), I have continuously been <u>a first class American Citizen resident</u> of California, not CA, a Washington D.C. territory, during which time I owned an automobile, drove and purchased at retail and not for resale summer time RFG (Gas at the pump). Each gallon I purchased was sold to me based on a "take it or leave it basis" and I did in fact pay the full sticker price, without any form of "kickback" for each gallon and part thereof.

C)   <u>My private, UN-listed Contact Information</u>

Gary Joseph Bonas II<br>
26255 Bungalow Court<br>
Valencia, California 91355<br>
661-993-0780

D)   <u>My Objection, My Law & My Supporting Arguments</u>

Second, my memorandum, which is fashioned first as an objection and, in the alternative, as my opt-out, is attached. It is presented in one page format detailing, with definitions, by way of both direct and twin parallel reality examples, the key ins & outs of correct price protocol as distinguished from CEO's computerized price alignment manipulation strategy.

Counsel Blended Around

Third, the nub of My Objection to the contract here, as a fiduciary client, is that We <u>receive a flat zero in compensatory</u> damages and <u>**a de facto zero in terms of injunctive relieve**</u>, compounded by the fact that my own counsel entered an agreement **not to represent** law, e.g.:

    1)   <u>The Elements</u> of one key statute under which they filed;
    2)   The real simple contract price right burden born by CEO's;
    3)   The Simple Rules marking exactly what right & wrong pricing is; and
    4)   Counsel's Omissions, fogging law and <u>wholesale lack of client & court candor.</u>

Related, on April 02, 1999, a gentleman named Dave Harvey (Media) specifically asked for my assistance in connection with the "soaring gasoline prices" in the Southern California region. An exact copy of Mr. Harvey's correspondence to me in that regard is attached:

Ex    04-02-99 Dave Harvey to me about IT correspondence & My Efforts To Assist

The "IT" Details, Split Into Four Short, Divided Parts



:DIA__PARTNERS 04/02/99 at 19:34:30 GMT, page 1

Dear Mr. Bonas,

I could not help but to
Be pleased to read of the
Class action involving egg
Prices in southern California.

We need your help!

As you know, gasoline prices
Are soaring in this region,
And without significant reason.

We always hear of pending
Legal action against the
Producers, but never hear
Of any results.

Please let me know of your
Thoughts on this issue.

Very best regards,

Dave Harvey

**********************
MEDIA PARTNERS
David S. Harvey
*********************
Story Development and
Visuals for Television

714-804-0850

17772 Irvine Blvd.
Suite 102
Tustin, Ca 92780

dharvey@bellsouthips.com
Instant wireless email!
Non Urgent Fax 714-242-1317

An (English LA Based) Broadcaster Exclusive
Available Air or Not,
Inquire.

Tell Your Pit-Bull...
I Keep Killer Bees!

**COURT SECURITY SYSTEMS, INC.**

Objection To Class Market Maker's
Manipulated Sticker Prices Per Hour A-Z

Ex   '08 My 300 Proof = Sticker Price & owed 8th Grade Math basic auditing (CPA) Stuff

Ex   '08 My 300 $93 Key Intern Price Proof – **Rule 4.1** Material Hourly Price Retainer Term

     As a verified factual introduction, compared to the above proof, I present the class market maker's max manipulated price per hours fact that Francis Scarpulla, a not court government appointed lead here, personally represents **himself and his team as being superior**, price right **rule & proof wise**, to those this honorable court designated to lead this government contract.

     First, Francis expressly represented to this court that he adhered to strict price right protocol proof and production in connection with his personally making the market by setting his max price in line with Lerach's '007 max market maker price – $900 per sticker price hour

Ex   '08 New Zell Bar Controller - Frannie's Remke (proxy) Declaration perjury – 900 price

Ex   '07 Compare X Maker Lerach $900 (in **stripes now) Max lid maker,** like his 1/3 gig

     Second, Francis, as usual, Francis failed to proffer any "price right rule compliance" proof in connection with his perjured 900 declaration or any other mark he has billed for.

     Third, I present the perjured fact that Francis, again a non-appointed lead, solicited this court to pay him off, pursuant to a government contract (court lead & lead assistance contract) for his staffs' contractor work. One manipulated sticker price tag for a paralegal is $210 per hour, unlike the court awarded non-market makers $140, whose big number sure looks reasonable in light of Scarpulla's $210 lid.

Ex   '08 Francis, A price maker's A-Z submission, under oath, at $210 –Paralegal M. Babione

Ex   '08 Blecher's Paralegal $140, compared to Francis' manipulated & un-backed $210. Id.

     Fourth, as all competent client fiduciary price right masters know, whether a graduate from Stanford Law School, Harvard or any JC, the single most pressing matter of universal economic pricing treason concern is **the solicitor/Francis** seller's (caveat venditor) implied covenant of "good price faith and honest price measures" (Leviticus 19).[1]  Now I understand that Mr. Joe Tobacco "agreed" in fact to Francis' rigged 900 and all of his other rigged paralegal et al prices, without a single basis of proof to support it. Mrs. Lerach, Weiss, Bershad & Shulman did the same thing recently in connection with their successful attempt at 8 million bucks for document box boy labor, without a single showing as to their actual "cost" associated with that "labor unit" billing mark or "overheard" or "expense" or "cost."

Ex   8 Million Doc Clerk Pay Off To Lerach, Weiess, Berhsad, Shulman, Hynes & Wallner

     This is merely a respectfully submitted guide with current reality samples to assist. Additional "Inconvenient Reality" samples are located at this United States Media Web Address: http://boneslaw.spaces.live.com/default.aspx

---

[1] I note that another "price right master" recognized by a Regional Reserve Company called "State Bar, Inc." publicly recognized Mr. Maxwell Blecher (in 1997?) as the price right master of the year, like Francis puffs himself to be now after a similar '05 false advertising publication by the Regional Reserve, Inc's Joanne Remke & team.

**COURT SECURITY SYSTEMS, INC.**



<u>Paralegal/Intern's Hourly Price By Correct Price Protocol Proof</u>

In compliance, Rule 4.1(a) prohibits an attorney from making false statements of <u>material fact or law to a third person</u>, courts included.[1] The comment gives as examples the following: (1) "estimates of price or value placed on <u>the subject of a [court award]</u> transaction" and (2) " a party's intentions as to an acceptable settlement of a claim . . . ."

Monthly Price Equals Cost Of Living 8th Grade Math – Anna Cooper Per Mo.:

| | |
|---|---|
| Mortgage and House | $4,020.00 |
| Groceries & Supplies | $2,000.00 |
| Gas-Gallon $ & Auto Expenses | $621.00 |
| Clothing | $200.00 |
| Health Care | $250.00 |
| Utilities & Phone | $600.00 |
| Car Payment | $102.00 |
| Gym Membership | $45.00 |
| Incidentals | $250.00 |
| Vacation & Retirement | $1,200.00 |

| | |
|---|---|
| All Cost = Expenses (A-E) | $ 9,288.00 A Mo |
| | 100 hrs a month |
| | <u>$93 ish</u> per hr |

This is my hourly rate, <u>which I owe, as a "green-thumb," to my clients & anyone I</u> <u>attempt</u> to <u>bill for my time spent representing or serving,</u> by court award or otherwise.

    A.    Average-cost line pricing, or-
    <u>A.</u>    [ Cost P]ricing the line as a whole rather-
    A.    [T]han as individual items, may be … sufficient … in growth markets"-

    A.    [B]ut <u>mature</u> markets … require <u>increased capability</u>-
    A.    <u>[T]o measure costs on</u> individual [stock]l items & to price accordingly."[2]

About proof, Disciplinary Rule 7-102 - Model Code of Responsibility says a JD shall not:

    (1)    <u>Conceal or knowingly fail</u> to disclose that which he is required by law to reveal;
    (2)    <u>Knowingly</u> use perjured testimony or <u>false evidence</u>;
    (3)    Participate in the <u>creation or preservation</u> of evidence when he knows or should know <u>that it is false</u>;
    (4)    Counsel or assist his client in conduct that [one] … <u>knows to be illegal</u> or fraudulent; and
    (5)    <u>Knowingly engage</u> in other illegal or conduct contrary to a Disciplinary Rule.[3]

---

[1] Model Rules of Professional Conduct Rule 4.1 (1993).
[2] <u>Competitive Strategy, Techniques for Analyzing Industries and Competitors</u>, Michael E. Porter, page 242 (1980 The <u>Free Press</u>).
[3] Model Code of Professional Responsibility DR 7-102(A) (3)-(8) (1993).



Exh. 3 Page   000000466

## Unocal RPG Antitrust Litigation
### ZELLE, HOFMANN, VOELBEL, MASON & GETTE LLP
### TIME REPORT from Inception through September 30, 2008

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Hourly Rate | Current Hours | Current Lodestar | Total Hours | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PARTNERS:** | | | | | | | | | | | | | | | |
| Francel D. Sourpulis | 17.2 | 0.2 | 0.3 | | | | 3.7 | | | 0.5 | $900.00 | 5.0 | $5,040.00 | 5.6 | $5,040.00 |
| Craig C. Corbitt | | | | | | 0.1 | 40.1 | | | 0.7 | $800.00 | 58 | $46,400.00 | 58 | $46,400.00 |
| **ASSOCIATES/OF COUNSEL:** | | | | | | | | | | | | | | | |
| Judith A. Zahid | | 37.5 | | 214.5 | | | | | | | $510.00 | 35.4 | $18,054.00 | 35.4 | $18,054.00 |
| Jiani M. Umbart | | | | #72 | | 8.3 | | | | | $460.00 | 222.8 | $102,488.00 | 222.8 | $102,488.00 |
| Travias L. Galloway | | 12.78 | 197.4 | | | 56.61 | | | 0.8 | | $435.00 | 1137.4 | $495,413.00 | 1139.80 | $495,413.00 |
| **PARALEGALS:** | | | | | | | | | | | | | | | |
| Maia J. Bablune | | | | | | | 2.9 | 0 | 0 | | $310.00 | 65.30 | $17,913.00 | 65.30 | $17,913.00 |
| Monica Rollin Stretse | | | | | 0.2 | | 4.7 | 0 | 0 | 1.4 | $210.00 | 4.20 | $882.00 | 4.20 | $882.00 |
| **TOTALS** | 17.2 | 48.39 | 122 | 1140.8 | | 115.01 | | 0 | 0 | | | 1,551.10 | 686,590.00 | 1,551.10 | 686,590.00 |

**CATEGORIES**
1. Case Assessment, Pre-Filing Investigation, Initial Complaint
2. Briefs, Motions, Pleadings, Legal Research
3. Class (certification briefing, class discovery, class rep notices)
4. Discovery (extills but not class) and Pre-Filing Post Investigation
5. Expert/Consultants
6. Case Management and Strategy
7. Court Appearances & Preparation
8. Trial
9. Appeals
10. Settlement

SANFRANCISCO #3214723-v1-UNOCAL___Time_and_Cost_Reports_for_Corbitt_Declaration_from_Inception_-_September_30,_2008

EXHIBIT A PAGE   000000010

**ENRON**

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
Time from Inception through December 15, 2007



| Name | Title | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Bandman, Randi D. | (P) | 116.50 | 600 | 69,900.00 |
| Box, Anne L. | (P) | 7,867.00 | 600 | 4,720,200.00 |
| Bull, Joy A. | (P) | 164.00 | 600 | 98,400.00 |
| Burkholz, Spencer A. | (P) | 1,732.50 | 600 | 1,039,500.00 |
| Ciccarelli, Michelle | (P) | 1,545.00 | 535 | 826,575.00 |
| Collins, Chris | (P) | 63.00 | 515 | 32,445.00 |
| Coughlin, Patrick J. | (P) | 1,610.00 | 725 | 1,167,250.00 |
| Daley, Joseph D. | (P) | 270.00 | 510 | 137,700.00 |
| Daniels, Patrick W. | (P) | 1,381.50 | 505 | 697,657.50 |
| Dowd, Michael | (P) | 27.75 | 700 | 19,425.00 |
| Doyle, William J. | (P) | 167.25 | 505 | 84,461.25 |
| Drosman, Daniel S. | (P) | 89.75 | 535 | 48,016.25 |
| Egler, Thomas E. | (P) | 13.50 | 515 | 6,952.50 |
| Hodges, Helen J. | (P) | 11,218.25 | 600 | 6,730,950.00 |
| Howes, G. Paul | (P) | 14,920.25 | 650 | 9,698,162.50 |
| Isaacson, Eric | (P) | 1,770.75 | 650 | 1,150,987.50 |
| Jaconette, James | (P) | 14,433.01 | 515 | 7,433,000.15 |
| Karam, Frank | (P) | 895.75 | 465 | 416,523.75 |
| Lerach, William S. | (P) | 8,513.60 | 900 | 7,662,240.00 |
| Park, Keith F. | (P) | 3,325.00 | 675 | 2,244,375.00 |
| Rice, John J. | (P) | 56.00 | 600 | 33,600.00 |
| Robbins, Darren J. | (P) | 1,037.00 | 650 | 674,050.00 |
| Rudman, Samuel H. | (P) | 107.50 | 395 | 42,462.50 |
| Saxena, Maya | (P) | 24.75 | 360 | 8,910.00 |
| Seidman, Peter | (P) | 360.75 | 335 | 120,851.25 |
| Steinmeyer, Randall H. | (P) | 117.75 | 510 | 60,052.50 |
| Stoia, John J. | (P) | 136.25 | 725 | 98,781.25 |
| Svetcov, Sandy | (P) | 656.00 | 700 | 459,200.00 |
| Walton, David C. | (P) | 841.75 | 600 | 505,050.00 |
| Weaver, Lesley | (P) | 52.50 | 505 | 26,512.50 |
| Abel, Lawrence A. | (A) | 197.00 | 500 | 98,500.00 |
| Acevedo, Elizabeth A. | (A) | 17.00 | 295 | 5,015.00 |

## BLECHER & COLLINS, P.C.

### Selection Criteria

Slip.Date     Earliest - 9/30/08
Clte.Selection    Include: 2172-001 Lossada v. Unocal
Atto.Selection    Exclude: ALL

| Totals for Client: 2172-001 Lossada v. Unocal | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| **Attorneys:** | | | |
| Maxwell M. Blecher | $750.00 | 194.70 | $146,025 |
| Harold R. Collins | $600.00 | 691.00 | $414,600 |
| Donald R. Pepperman | $550.00 | 32.00 | $17,600 |
| **Paralegal/Information Specialist:** | | | |
| Antoinette V. Shilkevich | $140.00 | 46.80 | $6,552 |
| **Grand Total** | | 984.50 | $564,777 |

EXHIBIT 2

IN RE REFORMULATED GASOLINE (RFG) ANTITRUST AND PATENT LITIGATION, USDC/CDCA - MDL NO. 05-1671 CAS (VBKx)

Milberg LLP

Inception through September 30, 2008

00000359

Ex. 3 Page

| Name | A | B | C | D | E | F | G | H | I | J | K | L | Hours | Hourly Rate ($) | Lodestar ($) |
|------|---|---|---|---|---|---|---|---|---|---|---|---|-------|-----------------|--------------|

*(Partner, Attorney, and Professional Support Staff rows — table content not legibly reproducible)*

Ex. 2 Page 0000000079

**EXHIBIT 2**

## Unocal (RFG Antitrust) Litigation
### Berman DeValerio Pease Tabacco Burt & Pucillo
### TIME REPORT: Inception through September 30, 2008

**CATEGORIES:**

| | |
|---|---|
| 1 | Case Assessment, Pre-Filing Investigation, Initial Complaint |
| 2 | Initial, Motions, Pleadings, Legal Research |
| 3 | Class (certification briefing, class discovery, class rep contacts) |
| 4 | Discovery (merits fact and class) and Post-Filing Fact Investigation |
| 5 | Depos/Consultants |
| 6 | Case Management and Strategy |
| 7 | Court Appearances & Preparation |
| 8 | Trial |
| 9 | Appeals |
| 10 | Settlement |

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Hourly Rate | Current Hours | Current Lodestar | Total Hours | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PARTNERS:** | | | | | | | | | | | | | | | |
| Joseph J. Tabacco, Jr. | 1.30 | 11.30 | 1.90 | -1.50 | | 8.30 | | | | 44.40 | $600.00 | 68.70 | $47,103.00 | 68.70 | $47,103.00 |
| Peter Pease | | | | | 0.70 | | | | | | $690.00 | 0.70 | $483.00 | 0.70 | $483.00 |
| C. Oliver Burt III | | | | | 1.00 | | | | | | $690.00 | 1.00 | $690.00 | 1.00 | $690.00 |
| Michael J. Pucillo | 3.40 | 205.80 | 158.70 | 370.30 | 145.10 | 1.00 | 191.30 | 5.80 | | 304.30 | $610.50 | 1,387.20 | $846,436.00 | 1,387.20 | $846,436.00 |
| Christopher T. Heffelfinger | 0.60 | | | | | 0.60 | | | | | $610.00 | 0.60 | $366.00 | 0.60 | $366.00 |
| Nicole Lavallee | | | | | 3.60 | | | | | | $610.00 | 3.60 | $2,196.00 | 3.60 | $2,196.00 |
| Kathleen Donovan-Maher | 6.00 | 25.75 | 0.75 | | -4.00 | | | | | | $580.00 | 36.50 | $21,170.00 | 36.50 | $21,170.00 |
| H. Scott Palmer | 22.10 | | | | 0.20 | | | | | | $415.00 | 22.30 | $9,254.50 | 22.30 | $9,254.50 |
| Todd Seaver | 3.75 | 153.00 | 112.00 | | 7.50 | | | | 0.50 | | $415.00 | 276.75 | $114,851.25 | 276.75 | $114,851.25 |
| **ASSOCIATES/OF COUNSEL:** | | | | | | | | | | | | | | | |
| Richard Wiele | 6.60 | | | | | | | | | | $550.00 | 6.60 | $3,723.00 | 6.60 | $3,723.00 |
| Sonny Nam | | | | | | | | | 8.50 | | $420.00 | 8.50 | $3,570.00 | 8.50 | $3,570.00 |
| Daniel Harris | 67.25 | | 1.25 | | | 20.50 | | | 3.33 | | $400.00 | 92.33 | $36,540.00 | 92.33 | $36,540.00 |
| Donald Buckley | 2.80 | | 1,100.00 | | | | 12.00 | | | | $370.00 | 1,102.80 | $407,000.00 | 1,102.80 | $407,000.00 |
| Lesley Hale | | | | | | | | | | | $345.00 | 14.80 | $5,106.00 | 14.80 | $5,106.00 |
| Joy W. Hui | | 0.25 | | | | | | | | | $345.00 | 0.25 | $86.25 | 0.25 | $86.25 |
| Christina Bambrianowcz | | 0.40 | | | 6.51 | | | | | | $330.00 | 14.00 | $4,917.00 | 14.00 | $4,917.00 |
| Shannon Coraglino | 89.54 | 47.54 | 87.15 | 1.00 | | | | | | | $370.00 | 225.13 | $74,299.50 | 225.13 | $74,299.50 |
| Karen Dinklefson | | | 2,469.58 | | | | | | | | $350.00 | 2,469.58 | $841,915.00 | 2,469.58 | $841,915.00 |
| Michael Shober | | | 395.00 | | | | | | | | $310.00 | 395.00 | $118,500.00 | 395.00 | $118,500.00 |
| Glynn Lunt | 1.50 | | | 1.00 | | | | | | | $280.00 | 1.00 | $280.00 | 1.00 | $280.00 |
| E. Chumbel | | | | 7.50 | 31.50 | | 2.00 | | 0.50 | | $265.00 | 41.66 | $233,624.00 | 41.66 | $233,624.00 |
| Julie Pal | 312.70 | 9.50 | 407.00 | 0.75 | | | | | | | $255.00 | 403.00 | $102,765.00 | 403.00 | $102,765.00 |
| Marc Greenspon | | 48.50 | 357.75 | 0.70 | | | | | | | $255.00 | 1.40 | $259.00 | 1.40 | $259.00 |
| Matthew D. Pearson | 0.70 | | | | | | | | | | $255.00 | 0.51 | $117.50 | 0.51 | $117.50 |
| James Magid | | 1.50 | | | | | | | | | $255.00 | 212.50 | $59,702.54 | 212.50 | $59,702.50 |
| Kyla DeValerio | 7.50 | | 179.00 | 27.00 | | | 25.00 | | | | $255.00 | 212.50 | $17,000.00 | 212.50 | $17,000.00 |
| Kristin Madigan | | 58.66 | 0.51 | 0.30 | | | | | | | $280.00 | 85.32 | $17,660.00 | 85.32 | $17,000.00 |

| Name | Title | Hours | Rate | Lodestar |
|------|-------|-------|------|----------|
| Meyerhoff, Albert | (OC) | 304.00 | 525 | 159,600.00 |
| Pierce, John | (OC) | 3,316.65 | 650 | 2,155,822.50 |
| Schrieber, Sol | (OC) | 50.00 | 575 | 28,750.00 |
| Alexander, Susan K. | (SC) | 64.25 | 550 | 35,337.50 |
| Byrd, Kristin | (CA) | 1,937.75 | 275 | 532,881.25 |
| Dawson, Dee | (CA) | 1,920.75 | 400 | 768,300.00 |
| Edmiston, Laura | (CA) | 2,901.25 | 275 | 797,843.75 |
| Ekelof, Charlotta | (CA) | 2,749.75 | 275 | 756,181.25 |
| Essa, Farzeen | (CA) | 86.50 | 280 | 24,220.00 |
| Fuller, Krista | (CA) | 2,819.25 | 275 | 775,293.75 |
| Greer, John | (CA) | 3,094.00 | 275 | 850,850.00 |
| Hardaway, Jerrilyn | (CA) | 12,316.75 | 425 | 5,234,618.75 |
| Hays, Shawn | (CA) | 6,109.75 | 500 | 3,054,875.00 |
| Hobbs, Allen | (CA) | 2,072.50 | 300 | 621,750.00 |
| Hurst, Lamonika | (CA) | 2,426.00 | 295 | 715,670.00 |
| Ibironke, Caroline | (CA) | 2,350.75 | 275 | 646,456.25 |
| Karnavas, Stephanie | (CA) | 2,388.25 | 275 | 656,768.75 |
| Lewis, M. Colby | (CA) | 2,952.75 | 275 | 812,006.25 |
| Mandlekar, Rajesh A. | (CA) | 2,603.25 | 400 | 1,041,300.00 |
| Mitchell, Jennifer | (CA) | 422.25 | 235 | 99,228.75 |
| Stephens, Jennifer K. | (CA) | 459.75 | 195 | 89,651.25 |
| Triplett, Sara | (CA) | 2,661.25 | 275 | 731,843.75 |
| Forensic Accountant | | 7,147.50 | 125 - 450 | 2,955,863.75 |
| Economic Analyst | | 3,531.75 | 240 - 315 | 1,011,807.50 |
| Investigator | | 1,977.00 | 200 - 360 | 581,500.00 |
| Law Clerk | | 620.50 | 165 - 260 | 140,273.75 |
| Summer Associate | | 254.00 | 220 - 260 | 59,530.00 |
| Paralegal, I, II & III | | 22,239.90 | 160 - 270 | 5,417,714.25 |
| Document Clerk | | 8,346.20 | 165 - 210 | 1,619,368.25 |
| Total | | 248,803.91 | | 113,251,049.40 |

(P) Partner
(A) Associate
(OC) Of Counsel
(SC) Special Counsel
(CA) Contract Attorney





### The Fact Framework

The section 16722 action instructs and guides this & all courts to observe A per se or "absolutely void" contract rule of illegality. It reads, verbatim:

[Rival based pricing] Contracts or agreements [are] in violation of the Act's provisions [and] are "absolutely void and unenforceable [and there is no defense]."[1]

Here, in lieu of correct price protocol (see below) the 16720 (e) identified direct CEO anti-cost pricing pact, to escape cost based pricing lids, which is a "contract or agreement" in fact about and that "affects the price" of each gallon unit sold is, by way of example, to be within:

"A few points [or cents] differential."[2]

### Absolutely Void & Absolutely Unenforceable

Now, view these 2 X 3 direct proof pager bits comparing correct with incorrect proof:

Ex    300 Correct Price Protocol Pager (A-1 View)
Ex    300 Correct Price Protocol Pager (A-2 View)
Ex    300 Correct Price Protocol Proof (A-3 View)

Now, this "few cents" CEO gig is agreed to by all member CEO price dictators. It is agreed to, in sync & in lieu of unilateral or independent and legal cost based pricing. Competent counsel should have secured the one page, multi-dimensionally incriminating document or elicited in deposition this direct evidence of the core "agreement or contract" proof, like these chain facts:

Ex    1993 Inside CEO Discovery - Price Dictated (Rival A-1 View)
Ex    1995 Inside CEO Discovery - Price Dictator (Rival B-1 View)
Ex    1996 Inside CEO Discovery - Price Dictated (Rival C-1 View)

Now, unlike a "restitution" case, the amount of cash owed for entering price in line rig pact with every gallon sold pursuant to their "be within a few points or cents of a marked rival" price dictation is not subject to any "overcharge proof." Every single oral contract entered is void and every single penny is owed back times three. Just like counsel's agreement to fraudulently conceal A) what correct pricing rules and analysis is & B) the elements and factual application of the Code section 16720 et seq., counsel has manipulated the "damage calculus" in connection with big lit cases in order to pump themselves, by way of actionable creative writing, in connection with the requests for big court government contract fee awards. As articulated in Brick, verbatim:

A ... reason for barring ... defense was the Court's [reality] concern that ... [CEO & LLP] ... violators "would retain the fruits of their illegality." Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).

### Injunction & 300% + = The Owed Damages Action

[It is] subject to injunction[3] and civil actions for [mandated treble] damages.[4]

---

[1] Calif. Business and Professions Code, §16722.
[2] In re: Baby Food Antitrust Lit., 166 F.3d 112 (3d Cir. 1999).
[3] Calif. Business and Professions Code, §16754.5.
[4] Id., §16750.





**Ex**     The Presumed Invalidity Of Oral Gas Price Per Gallon Contracts

The Triple X-Box Is Real Simple Everyone Knows Their Own Overhead

Rule: "In...competitive ... price is ... = to cost & each ... knows his own cost."[1]

**Whatever price IT is IT must** equal the cost **of useful labor time counted up** in serving & serving it to We the People.  It is the core contract term determining if it is owed or not:

A)     Owed [Gallon] Cost Equals [Gallon] Price Paperwork;[2]

B)     Before setting a cost equals price-price per gallon;

C)     Owed Cost Equals Price Paperwork, before shifting a price;

D)     If not done the price is wrongly set & therefore not owed to be paid; &

E)     Any contract obligation entered not to employ cost pricing **is illegal** (e):

"**...interference...is unlawful per se.**"[3]

It is also called equal "consideration" in contracts, **respect for others hard labor**:

If...reasonableness...would ...become an issue ... its philosophy—supplanted by one—**alien to a system of free** competition; ...**not... the charter of freedom** ...intended (& promised)."[4]

Here, instead of employing legal **price based on cost** element studies, exactly as I was trained by Complex Lit Plaintiff's counsel, CEO Rival members employ these forbidden pricing acts to reach their Max price for max interest float revenues, verbatim:

"Knowledge of a competitor's prices seemed to have **the affect** of keeping prices within **a narrow ambit [like the entire structure of firm partner, associate & paralegal price lists submitted].**" "Knowledge of a [Rival CEO's gallon price] ... prices seemed to have the affect of keeping [up gallons] prices within **a narrow ambit.**"[5]

The Key "Price" Fee Award Material Term in Faith In Contracts' Covenant

**Max**ims of (gallon commodity oral) contract drafting that pertain to this are:

A)     Things invalid from [go] ... cannot be made valid by subsequent act.[6]

B)     A thing void in the beginning does not become valid by **lapse of time.**[7]

C)     Time cannot render valid **an act void in its origin.**[8]

D)     Once a fraud [retainer contract], always a fraud [retainer contract].[9]

[1] Posner, Antitrust Law, An Economic Perspective, Ch 7, et 135, 136 (University off Chicago Press, 1976).
[2] Beasley v. Wells Fargo Bank, (1991) 235 Cal.App.3d 1383 , 1 Cal.Rptr.2d 446 Layman, not Regan, in Beasley), Green House thumbs too.
[3] U.S. v. Container, 393 U.S. 333, 337 (1969) , citing United States v. Socony-Vacuum Oil Co., at page 224, n. 59.
[4]Id, at page 338, citing Vacuum, 310 U.S., at page 220 –221.
[5] Container, 393 U.S. 333 ('69).
[6] Trayner, Max. 482.
[7] 1 S.• & R. 58.
[8] Dig. 50, 17, 29; Broom,• Max. 178.
[9] 13 Vin. Abr. 530.



1



1)   <u>Gas Price, Unit & Revenue Pool Clearinghouses</u>

    A)    [I]n **a competitive** [Gas] market **price is equal to cost** and each seller knows his own cost."[1]

    B)    The **average variable** cost of a [gallon unit] … is the sum of all variable costs divided by the number of units produced.[2]

    C)    Variable costs are distinguished from fixed costs that remain constant regardless of the number of units produced.[3]

    D)    [Gas] Profits are supra-competitive when they are unrestrained by [direct cost price] competition.[4]

2)   <u>To Cheat To The Tune Of A Collective Trillions Each **Summer** +</u>

    A.    We [CEO's] need rivals' <u>current prices</u> in <u>particular rival locations to set and maintain [and hold up regular] prices</u> [way above price equals cost competition levels]. That's how it works.[5]

    A.    [We CEO's all bought] … a … [linked] <u>price management system</u> that was run by the computer that had certain parameters [like at or] … cents over [or under A locked rival fed price by] … zone … and … [stabilized - called] hold retail.[6]

<u>Chevron Corp., No. 2 b</u>ehind Exxon Mobil among U.S. oil companies, also had its best year ever in 2007, saying Friday that **it banked a[n extra] … of $18.7 bil**lion.[7]

3)   <u>Remke's Bar Legislators Smoked Filled Room Writing & Agreeing On Court Rig Scripts</u>

    They deceitfully say that circumstantially (interdependent pricing) is A) legal & B) lacks any identifiably forbidden acts, which, if true, makes it impossible to regulate. <u>It is a flat intentional and uninsurable full court Master White Shoe lie.</u> The taboo three element standard is "sought, obtained & used," 393 U.S. 333 ('69). It is <u>the only reasonable extension</u> of three big cases, e.g., <u>Container</u>,[8] <u>Goldfarb</u>,[9] & <u>Rice v. Board of Alcohol</u>,[10] all direct evidence cases, all in "sought, obtained & used" synchronized computer price alignment software accord."

    <u>Matsushita</u>, foremost, explains HOW summary judgment operates here. It affirms hornbook law that courts are <u>bound to construe the facts in the light most favorable to the non-moving party</u>, to give the non-<u>moving party the benefit of all reasonable inferences</u>, and to <u>refrain from making credibility calls</u>. It notes that the accuser "must do more than **simply show** that there is some <u>metaphysical [price wrong] doubt</u> as to the material facts."[11]

[1] Posner, Antitrust Law, An Economic Perspective, Ch 7, at 133, 136 (University of Chicago Press, 1976).
[2] Liggett Group v. Brown & Williamson Tobacco, 964 F.2d 335 page 336 note 1 (4th Cir. 1992).
[3] Liggett Group v. Brown & Williamson Tobacco, 964 F.2d 335 page 336 note 1 (4th Cir. 1992).
[4] Liggett Group v. Brown & Williamson Tobacco, 964 F.2d 335 page 336 note 3 (4th Cir. 1992).
[5] Heredia TT, 1898:11-22.
[6] Bill Gensemer TT, 2657:6-2658:23.
[7] '07 Revenue at Exxon Mobil rose 30 percent in the fourth quarter to $116.6 billion from $90 billion a year ago. For the year, sales rose to $404.5 billion – a figure just slightly lower than the U.S. Defense Department's fiscal 2007 budget.
[8] U.S. v. Container, 393 U.S. 333 ('69).
[9] Goldfarb v. Virginia State Bar, 421 U.S. 773 (1975)
[10] Rice v. Alcoholic Bev. etc. Appeals Bd. , 21 Cal.3d 431 (1978 Ca. Supreme).
[11] Matsushita v. Zenith Ratio Corp., 475 U.S. 574, at 588 (1986).

**WHAT BAR-CEO DAVID
O'REILLY SAYS V. DOES**



The following rules apply to <u>all retainer contracts</u>; IT is <u>owed on request</u>, or all owed back <u>X-3+:</u> "In the usual ... [contract] case, <u>the [Wiess seller soliciting an award] bears the burden</u> of establishing <u>a pro "price equals direct costs"</u> ... justification.[1]

| | | |
|---|---|---|
| A) | +: | Add Up All Overhead (with a cushion) For A Defined Period; |
| B) | %: | Divide By Units You Hope To Serve To Meet It; & |
| C) | = | Set 1 Price Accordingly – collection/ordinary expenses included. |

| | |
|---|---|
| All Mo. <u>Red Roof N Roof</u> Things: | $4,500 |
| All <u>Mo Foo</u>d Stuff: | $1,000 |
| All Mo Car Things: | $1,000 |
| All Mo Attire Things: | **$1,000** |
| All Mo Health Things: | $7,000 |
| All Mo <u>Office</u> Things: | $1,000 |
| All Mo Vacation – Retirement: | $5,000 |
| Other ME Stuff: | $9,500 |

| | |
|---|---|
| + All Costs ("AC") | $30,000 |
| % Divided by | % 100 hrs |

| | |
|---|---|
| = Per hour | $300.00 |

Now in terms of the <u>hours I shall put in</u>, by the social contract oath I am bound by, I am <u>required to do bono. no charge. work</u>, which triples the 100 number - for me - netting down to 100, see. How much <u>Faithful American Service</u> do you do per MO.?

An attempt to abridge "IT" exposes <u>me (like all guardians)</u> to something I really don't even want to <u>think about</u> (Article 3's express Remedy), which is why I won't. I know what I may & may not do, related to counting, as a faithful American, on notice of this case – Regan – Layman case, dicta on <u>what I learned in required faith coursework at J.C., Beasley!</u>[2] Supreme IT principles are in <u>this trilogy of cases</u> - <u>Goldfarb v. -- Bar,</u> 421 U.S. 773 (1975); <u>Sugar,</u> 297 U.S. 553 (1936), & <u>Container,</u> 393 U.S. 333 (1969).

<u>If I don't do IT & show IT before asking</u> for money, <u>I am exposed, so I do!</u>[3]

Every [Partner] person who shall ... attempt to monopolize, or <u>combine or conspire with any other [in house] person</u> or persons, to monopolize any part of <u>the trade</u> or commerce among the several States, or with <u>foreign [all state] nations</u>, shall be <u>deemed guilty</u> of a felony, and, <u>on conviction</u> thereof, shall be punished by <u>fine not exceeding $100,000,000</u> if a corporation, or, if any other <u>person, $1,000,000, or by imprisonment not exceeding 10 years, or by both</u> said punishments, in the discretion of the court.[4]

---

[1] See *National Soc. of Pro. Engineers* v. *U.S.* 435 U. S. 679. 695 (1978); 7 Areeda, ¶ ;1507b, at 397; 11 Herb H., Antitrust Law ¶ ;1914c, pp. 313-315 ('98);
[2] CORRECT PRICING, M.e. porter, Competitive strategy, page 242 ('80 free press).
[3] "There shall be no preference of [IT] commerce.  Article 1:9 – All Gas CEO - 500 Price Zars.
[4] TITLE 15 > CHAPTER 1 > § 2 § 2. Monopolizing trade a felony; penalty



1

## PRICING STRATEGY

Our pricing strategy will reflect the following philosophy

**ZONES**

- We will operate three basic price zones. These zones will then be expanded to cover geographical business areas.

   Ultra Competitive zone - against Staters, Mass Merchants and the Club Stores.

   Very Competitive - our base zone against Lucky, Smith, and Albertsons.

   Competitive - against Ralphs, Hughes, and Alpha Beta.

   Non-Competitive - Resort stores and Catalina store

   Special zones will be developed to support a specific strategy for selected groups of stores.

   Pavilions

**GROCERY/FROZEN:**

- Top 300 item, including Dairy/Deli and Liquor, to be within pennies of Lucky in the base zone.

- Overall mix in the base very competitive zone to be 3% to 5% over Lucky. Other zones to follow the attached matrix.

- Measure spreads weekly based on 8500 items spread across all retail departments.

- Use the 'new low price' shelftag, along with MoreBuys, Advertised specials, and VonsClub items to give price impression.

VO: ...

**EXHIBIT A (Part 2 of 3)**

# RALPHS COMPETITIVE PRICING STRATEGY
## FALL 1993

Ralphs pricing strategy for the Fall of 1993 is designed to make Ralphs prices more directly competitive with specific local competitors in the various areas in which we operate. This strategy will allow Ralphs pricing to target Lucky pricing in San Diego area stores competing directly with Lucky and to focus on Vons pricing where they are the dominant competitor throughout the major portions of Los Angeles and Orange County. In addition, the overlaying of specifically targeted sensitive item lists in all applicable geographical areas will provide an additional competitive pricing tool to target Hispanic and EDLP (Every Day Low Price) operators (e.g. Food 4 Less, Smiths, etc.) as necessary. The new competitive pricing strategy will be as follows:

## REGIONS

### I. VONS

Region 1 - Chainwide LA

Region 2 - Chainwide & Expanded HBC

Region 8 - Hispanic Sensitive List

Region 4 - San Diego

Region 6 - Smiths Sensitive List

### II. LUCKY

Region 3 - Los Angeles - Low
(e.g. eastern trade area)

Region 4 - San Diego - Low

Region 7 - Lancaster/Palmdale

### III. NO VONS/LUCKY

Region 9 - No Vons/Lucky Competition

## POLICY

Vons price on all items, plus 2000 item sensitive item list at Lucky + zero to 2% and special sensitive item lists at Lucky or low of the low of special competitors.

Lucky + 2%, plus 2000 item sensitive item list at Lucky + zero to 2%

Vons +3%

Ex 1117

9228

In addition, all stores will feature Multi-Buys at "Club prices" on    eggs, and over 40 additional key items where the multiple pur...         ..ne "Club store" price.

**REDACTED**

AMERICAN STORES COMPANY

1996 Strategic Plan

# MAJOR GOALS

## COMPETITIVE POSITIONING

✓ Maintain ▮▮▮▮ Price ▮▮▮▮▮ among major conventional chains in Southern California

✓ 5 % spread between Lucky, Vons and Ralphs

✓ 2-3 % spread between Lucky and Albertsons

✓ Even to 1 % spread vs. Stater Bros

✓ Major banking initiatives

✓ 3 year migration to the upper right side of Price/quality matrix

✓ Improve perishables quality and variety perception

3

*handwritten annotations in left margin:*
*Alberts Vons/Ralphs*
*Gibson/Savon*
*Albert*
*Pillsbury*
*AL*

*STAR Enter = Ladder/Tg*





<u>RemKey's Bar, Inc. & CEO's</u>
<u>Oligopoly Wrong Pricing Gibberish</u>

In concert, the Bar & Pro Bar Stool players, after meeting about IT, discussing IT and agreeing in fact about IT, represent to the honorable court, by words and omissions, the following, which is an express in court statement made, verbatim:

A.       There is no basis ... **to suggest [LIE]** ... some obligation-

    A.       ... to have cost ... pricing OR

A.       There is no basis ... **to suggest [LIE]** ... some obligation-

    A.       ... to base pricing ... **solely on costs** OR

A.       There is no basis ... to **suggest [LIE]** ... **some obligation-** ....[1]

This open & notorious Court perjury (backed by Joanne Remke her Ivy Bar Stools) <u>is coupled</u> with the following Defense Bar Fly court smoke & mirror perjury script:

> "<u>In the absence of</u> direct evidence [of exactly how prices are set up & changed], the plaintiffs may nevertheless support their claim with circumstantial evidence of conscious parallelism. **Conscious parallelism, sometimes called oligopolistic price coordination,** is described as the process "not in itself unlawful, by which firms in **a concentrated market** might in effect share monopoly power, setting their prices at **a prefixed maximizing,** supra competitive level by recognizing their shared economic [rig] interests and their interdependence with **respect to price** and output decisions." **The theory** of conscious parallelism is that uniform conduct of pricing by competitors **permits a court to infer the existence** of a conspiracy between those competitors. Thus, when two or more competitors in such a market act separately but **in parallel fashion** in their pricing decisions, this may provide **probative evidence** of the existence of an understanding by the **competitors to fix prices."[2]**

Now, the above white collar court creative writing, by contract (retainer) to fraudulently conceal simple felony price facts from Us & the average Joe lawyer – A-Z.

**[W]ith direct evidence [of how prices are set up daily]** "the fact finder is not required to make inferences [about how prices are set up] to establish facts [about how prices are fixed & changed]."[3]

<u>Bar's Private Legislation Pricing Lie</u>
<u>Engineered To Deceive Courts & Us - Fiat</u>

---

[1] The firms under oath, 10-15-99 trascript, page 69, LINES 5-9 (69:5-9).
[2] Id.
[3] JACOB BLINDER & SONS v GERBER PROD CO, Filed January 12, 1999 - UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT (Nos.: 97-5609 & 98-5125) – aka - In Re: Baby Food Antitrust Litigation.



EXHIBIT A PAGE   000000025

69

1          THE COURT:  This was a case only about eggs, although as

2     hard as I tried, we didn't stay only on eggs.  But we did agree

3     that we weren't going to do grapefruits and mops.  I don't

4     think we ever did.

5          MR. NOONAN:  What I'm saying, your Honor, is there is no

6     basis in the law to suggest that we have some obligation to

7     have cost-plus pricing policies or to base our pricing to the

8     public based solely on costs or only to charge a certain dollar

9     amount above costs.  We know that's not the real world.

10              On the issue of reporting to the USDA, we didn't

11     hear from anybody from the USDA.  And I don't think there was

12     ever even testimony or questions elicited from the grocery

13     store executives on whether you report, what you do report to

14     the USDA, and what you don't report to the USDA.  I think the

15     only evidence we had on that was the footnotes in the USDA

16     report, which indicates that the costs that were reported in

17     certain regions, including the western regions, included

18     discounts and rebates.  That's the sum and substance of the

19     testimony.  That case was simply not tried in this courtroom,

20     your Honor.  And in addition to alleging it improperly at this

21     point in time, the plaintiffs haven't proved that case.  There

22     is a total failure of proof on the notion or suggestion that

23     either the receipt of rebates or the manner in which they were

24     reported violates 17200, any statute or any law known to man.

25     Same thing with respect to again establishing base or zone

26     pricing.

27              In the alternative, how do plaintiffs suggest that

28     retail grocers or other retailers price their products?  You



RemKey's Bar Stool & ABA
Pres Agrees To Court Script Perjury

By Defense Retainer Contract/Agreement In Restraint Of Trade

Q.   I want you to **assume a different definition** of price leader, if you would, than the one you used yesterday.[1]

Q.   And I want to ask you who was the company in the time period when you **were trying to increase** –

Q.   -- when you were trying to increase your gross [price] margins who was ... leading [the pact]–[2]

Q.   -- the price movement upwards ... was that -u- or some other company?
A.   Under that definition ... it was some other company.[3]

Q.   And who would that company have been ...?
A.   By that definition it would be V—[my company].[4]

MR. STONE: Thank you.[5]

Q.   Did you ... check [UP]?
A.   Yes, sir.

Q.   People ... check [UP] you?
A.   Yes, sir.[6]

A.   No, I never considered supply and demand as a factor" in ... price [moves]....[7]

Now, unlike 99 cent store cost pricing, where the entire indirect rig cost of "check up teams" is eliminated, which cuts overhead, Chain CEO's confessed, verbatim:

A.   The first point that I'd like to make is that typically ...markets do not buy ... at a wholesale cost. add a fixed markup of some kind to – that will result in a gross ..., and do that for all products.[8]

A.   In other words there is not a standard markup across the board for all products.[9]

---

[1] Bill G., on trial at page 2668:25-2669:9.
[2] G, B on trial, page 2668:25-2669:9.
[3] G, B on trial, page 2668:25-2669:9.
[4] G, B on trial, page 2668:25-2669:9.
[5] G, B on trial, page 2668:25-2669:9.
[6] **Thomas D, Live on Trial, page 2353:26-2354:8.**
[7] Jim-bob Layden's M. Czaykowski Movie Video, on trial, page 62:14-63:08.
[8] German, Gene, on trial, page 3795:1-10.
[9] German, Gene, on trial, page 3795:1-10.



1



Instead, to move up & down hold stable, on price signal cue, to find the optimal max cartel price or sweet spot, way above owed competitive price levels, where price equals costs, they recon, report & move in concert:

Q      How do they know that?

A      Well, they – ... companies, all retailers [fib - not 99 cent stores] do this by some form of ... checking [up]. [10]

A.     Every retailer, every super– that ... I've dealt with has <u>a system of checking [up on] prices</u> of their [primary rival target computer lock on] competitors. [11]

A.     They have to do this [RemKey Bar Stool Lie]. [12]

CEO's "agree" or "contract" to do IT, like they contracted to "GO PUBLIC, which was & is a very top "what for what" contract choice small operators did & do not enter.

About the check up to move in lockstep contracts, the good German, Doctor, explained the process, verbatim:

Q.     In your experience, how have companies accomplished that?  How do they do that?

A.     Well, historically & typically companies will send their own people into the competitors' stores & ...

A.     ... their own people ... have either a list of [items] prices or some [item] range of [item] categories that they want their employees to check [up on]. [13]

MR. STONE: Thank you. [14]

A.     Employees go it, they look at the prices; they are all posted; & they write down the prices or they use a scanner. [15]

A.     We're into **new technology today**, so some ... checking [up] today actually takes place with hand held scanners. [16]

A.     We also see a change taking place today. I've talked to retailers in the last couple of years.

A.     More & more are <u>using third-party price-checking companies</u> to gather the information for them. [17]

---

[10] German, Gene on trial, page 3805:13-19.
[11] German, Gene on trial, page 3805:13-19.
[12] German, Gene on trial, page 3805:13-19.
[13] German, Gene on trial stand, page 3805:20-3806:22.
[14] G, B on trial, page 2668:25-2669:9.
[15] German, Gene on trial stand, page 3805:20-3806:22.
[16] German, Gene on trial stand, page 3805:20-3806:22.
[17] German, Gene on trial stand, page 3805:20-3806:22.





A.   And it is becoming common particularly because it's more economical. [18]

A.   The super—company can gather more prices at a lower cost by having
another group do it than by sending out their own people. [19]

### Gas Chains Contract With Mobile Units
### Who Recon Target Rival Location Price Signs

**The contract** is defined, direct or indirect, through common contract associations
or not, it doesn't matter:

A.   So they gather this information through one of the means that I've
mentioned.[20]

**About the direct evidence** of rival exchange calculated to align up & move in
lockstep, up & down & always way over defined competition levels (price equals cost),,
calculated to tamper with prices, there are **"lists" in three general categories**, depending
on the core & fringe players in various demographic pockets:

Primary Computer Target Lock List

A.   We didn't have them as either a **primary or secondary** competitor in any
of our stores. [21]

Secondary Computer Target Lock List

A.   However, we always wanted **to keep an eye on everything** that was going
on in the market. [22]

The Fringe Players "Keeping an Eye" List

A.   So we **periodically** had surveyed a number of different competitors. [23]

### Gasoline

Chain gasoline cartel alignment, via price verification & moves, within close
**nickel or so "narrow ambits,"** to avoid the forbidden appearance of forbidden
"matching" in exact cartel parallel fashion, is an easy direct evidence case owing to the
fact that there are less than five **mammoth staple gallon unit types**. That computer set
rival based nickel or so price window is not "sporadically" watched; it is systematically
verified & moved on, in lock step, with out an oral word ever spoken, on cue, by leader
moves first & others immediately follow. It is, however, a very flexible system, highly
sophisticated number game system

---

[18] German, Gene on trial stand, page 3805:20–3806:22.
[19] German, Gene on trial stand, page 3805:20–3806:22.
[20] German, Gene on trial stand, page 3805:20–3806:22.
[21] Thomas D, on trial, page 2352:1-8.
[22] Thomas D, on trial, page 2352:1-8.
[23] Thomas D, on trial, page 2352:1-8.





### The Contract Is Mobile Unit
### Secret Rival Sign Price Verification

Naturally, the higher the pump price the more bullion there is from top (OPEC) to bottom, rendering it both a direct evidence vertical & horizontal rig, by a web of "check up" contracts, streamlined **through computer uploads & reports** across the field.

### Felony Sought, Obtained & Used

Q.   And how do you use them?

A.   The -- I get the form. I compare ... reported prices... in that particular format. And I ... determine **if it's in line with the pricing policy.** If it's not, I'll make the change in **that particular region** where the pricing ... is not in line.

That's essentially [IT] —[24]

Q.   And as far as **the timeliness ...** of the data provided, which survey provides ... **most timely** information?

A.   This one **right here actually is most timely.**

Q.   And why is that?

A.   The checking by ... checkers is usually reported in on Thursday morning. I can see this Thursday afternoon.

Q.   And how is ... this form prepared?

A.   It's ... Mark Orr's department **[that] collects the data** .... They fill this form in **on the computer system.** And it's available to me **through my computer** that -- when they are **completed filling it in,** usually that afternoon.[25]

Q.   And you ... describe that, "It is not and has not been my responsibility to define the pricing regions or to determine **which stores belong in which pricing regions,**" correct?

A.   Yes.[26]

A.   I ... this ... was written by our counsel, paraphrasing, you know, interview sessions where, you know, they did discovery on what I knew about [IT] ....

Q.   And you signed [IT] ...?

A.   That's correct.

Q.   And under penalty of perjury?

A.   That's correct.[27]

[24] Ervin, Cohn & Jessup's Ken Hanshaw, Live, page 3353:12-24.
[25] Ervin, Cohn & Jessup's Ken Hanshaw, Live, page 3354:9-23.
[26] Ervin, Cohn & Jessup's Ken Hanshaw, Live, page 3272:22-26.
[27] Alito's buds at Arnold & Porter's Czaykowski Live, page 2142:1-11.

4



**Exchange Is How All Gas Chain Cartel**
**Members Align All Prices & Stick M Up**

In lieu of real simple correct price protocol, at which price equals the cost of
doing business **with nothing left over to puff about**, the following is a capital felony
**cartel snap shot**, called a **Sugar** Case "schedule"

| | |
|---|---|
| R--1 | **match** V--s' Lakewood [price Zone]; |
| R--2 | **match** V--s' Compton [price Region]; |
| R--3 | **match** [X's] ... Riverside [price Tier]; & |
| R--4 | **4%** higher[1] than Region 1 (same as V--s' non-competitive Resort stores and Catalina store) [up-scale like Beverley Hills Zone]. |

Q.   And [to do it] you **had [contract** staff] people who went out and checked
[up on] the price of competitors ... (to do IT), right?

A.   Our pricing department (heads) had people go out & check [up on] the
prices.  **I got the results of those surveys.**[2]

Q.   Now, you ... did all of the pricing ... store-wide, is that right?

A.   Yes.[3]

Q.   And so prices **weren't set by individuals in the store, you set them for**
**the whole system ... right?**

A.    Yes.[4]

Q.   And what you were concerned about was not lo**oking at some particular**
**store on some particular day or week**, but that over time your total
return ... was a significant and important contributor to your targets, right?

A.   Yes, although **at times we did look at individual stores**.[5]

A.   There may be an independent next to a particular store that was doing a
**heck of a lot of business** (because regular retails were lower that our
member schedules).[6]

A.   **[Mr. CEO** admitted, verbatim] ...we were constantly checking our
competition **to make sure we were in line [by zone]**.  And we would be
watching that price check every week and **make sure we are not out of**
**line**.  There were times when we would get a little out of line **[by price**
zone], and we would back up.[7]

Q.   And what do you mean by "in order to be competitive."

A.   In order to **fulfill our [match** a rival cartel] pricing policy.[8]

---

[1] Ralph Exhibit 81, aligned with Vons Exhibit 188 (Vons 1-5-95 Pricing Strategy).
[2] Zuccaro Live, page 3174:26-3175:1.
[3] Zuccaro live, pages 3177: 25-3178:2.??
[4] Zuccaro live, pages 3177: 25-3178:2.??
[5] Zuccaro live, pages 3178:4-12.
[6] Zuccaro live, pages 3178:4-12.
[7] Gensemer live, page 2572:16-23.
[8] Larry Del Santo Video Depo movie, page 140:16; generally 139-140.

1





Attempted Court Crimes &
Successful Defense Court Crimes

A.   What the defense has nicely done is ripped off the arms & the legs & the head of [the beast] ... and said, "**Aha, this can't be a human** being, it's just **an arm. This isn't —**".[9]

A.   They are trying to get the court to focus to this to the exclusion of other testimony and take it out of context on how [IT] ... fits together.  It's a part of **the puzzle.**[10]

A Supreme Clue

"The nature of the information [rival current price data collection mechanics, aka] exchanged will sometimes **provide a clue** to the proper legal treatment of the exchange."[11]

"Maintaining completely free and open [regular retail price] competition so that "the public may receive better goods and [better & more] services at a **lower cost"** is purpose of the ... Act."[12]

A.   You ... determine the price **of [all]** ... based on the [direct costs of serving] ... the [thing] .....[13]

A.   We [all] know ... the real [law] world."[14]

Each [member] ... monitors the [regular] retail ... prices charged by the other [schedule members] ... and each is aware of this fact.[15]

This price-monitoring system is used by [them] ... to effectuate their agreement to refrain from competing ... on the basis of [regular retail] prices and to raise ... prices to unreasonably and artificially high levels throughout Southern California.[16]

"...the named D--s, together with their co-conspirators, engaged in a contract, combination **and conspiracy in unreasonably restraint of trade and commerce**, as alleged in the Complaint."[17]

The contract, combination and conspiracy alleged in this Complaint constitutes a **continuing agreement or understanding and concert of action** among Defendants and their co-conspirators....[18]

[9] Reporters' Transcript, 6-14-99, Page 154:15-21.
[10] Reporters' Transcript, 6-14-99, Page 154:15-21.
[11] R. Posner, Antitrust Law: An Economic Perspective, page 146 (1976).
[12] Bus. & Prof. Code §16700 et seq; see also State of California ex rel. John K. Van de Kamp v. Texaco, Inc. et al., 46 Cal.3d 1147 (1988).
[13] Lewis C. Solmon T&T, 1751:2-10 (On MR=MC, 1 by 1).
[14] **PAGE 69, LINES 5-9 (PL, 69:5-9).**
[15] The sole Complaint, page 7, paragraph 23.
[16] The sole Complaint, page 7, paragraph 23.
[17] Cmplt., ¶30
[18] Cmplt., ¶30

2





### Fowl Mouthed & Ruthless
### Stone 8 Nasty Mirror Lerach Affects

To be sure, there are plenty of lawyers who sue at the drop of a hat. But none are as loathed--or feared--as Lerach, either inside or outside his profession. What makes him loathed is that he is mean: a belligerent, vengeful, foul-mouthed bully. What makes him feared is that he is powerful. Many ... who spoke to FORTUNE about Lerach describe him in Godfather-like terms, likening him to a ruthless don, willing to do whatever ... to protect & extend his turf.

### [A mean,] belligerent, vengeful, foul-mouthed bully

The perfect Cover Boy (Big Mouth Bill), Weiss' Right Hand Man's Secrets, verbatim:

A partner rushes into his office with word of some recalcitrant adversary. "I'd haul his ass into court and smack him," Lerach advises. "If they don't put up a shitload of money," Lerach declares, "the lids on the silos are coming off!"

I have the greatest practice of law in the world," Lerach once boasted. "I have no clients."  Lerach barked. "I don't care who your clients are. I'm going to make their bones [& Skulls Kerry, Cheng, Perry, Barnett & Stone] bleach in the desert."[11]

A)     "[A] cunning economic terrorist;" and
B)     [R]efers to his type as "pirates of the ... [CEO Gas] bar.[12]

[Guido, Lief, Susman, Scarpulla, Tobacco, Bernstein, Hausefeld, Lovell &] Lerach [Mel, Len Simon, Rob Walner Patricia Hynes & Mel Wiess, e.g.] divided the pie however [t]he[y] wanted--and firms claiming similar hours sometimes got widely disparate fees. Though Lerach was regularly doling out millions of dollars, the subordinate firms were not allowed to know how much anyone else was being paid.[13]

SEC. 2. (a)   Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.

SEC. 2. (b)   A publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, or by a press association or wire service, or any person who has been so connected or employed, shall not be adjudged in contempt by a judicial, legislative, or administrative body, or any other body having the power to issue subpoenas....





Specialist All Cap Name Character Assassin Contractor Remke

[11] King Of Pain ...., By Peter Elkind Reporter Associate Doris Burke, September 4, 2000
[12] http://www.sandiegometro.com/1996/sep/money.html
[13] http://money.cnn.com/magazines/fortune/fortune_archive/2000/09/04/286801/index.htm





"If they don't put up a shitload of money," Lerach declares, "the lids on the silos are coming off!"

The King of Pain [Bill Lerach] Is Hurting - Loathed because he's so mean, feared because he's so powerful.

Valley executives tend to view him as "lower than pond scum"--as Cypress. Silicon Valley's most prominent ... has called Lerach a "cunning economic terrorist."[8]

### Damning Internal [Public] Documents

[O]nce Lerach is allowed to begin discovery--and search for damning internal documents--well, at that point, the game is pretty much over. "You can always find a document to incriminate them." he says.

### Like Having X-Ray

"It's almost like having X-ray vision," he boasts. "I'm almost always right. I'm seldom wrong."

### Now Deeply Legally Threatened – Flat - Good Ole Boys Business Model

[They] ... developed an unprecedented system in which other plaintiffs firms were expected to pay tribute to Milberg Weiss to do business in California. This system, which allowed [Weiss & Hynes &] Lerach to dominate shareholder litigation there, is what is ... threatened.

### Like Shoe Boxes

"These cases [against the big boys – By Name] are like shoeboxes in my shoe store, and I've got hundreds of them," he'd explain. "I don't need to settle this case; I'll be glad to go to trial. I'll just take another shoebox off my shelf."

### The Leads' Wack Up – 5%

[The Wiess &] Lerach masterminded a plan to impose a 5% "tithe" on all California fees Milberg West distributed in the whack-up.

### Wiess' IBM Retainer Q – The List
### (Quid Pro Quo Retain & Pay – Bills Thing)

He is widely acknowledged as the dean of the class-action securities bar, and travels the world in a private jet. He has garnered praise for his part in negotiating a billion-dollar settlement for survivors of the Nazi Holocaust. Weiss was even retained by IBM--to help defend it in a class-action securities suit![9]

"Acting maliciously and in flagrant bad faith," the complaint asserts, the firms "have wrongfully stopped paying petitioner's legal fees in retaliation for his agreement to ... cooperate with the Government...."[10]

---

[8]

[9] Schulman Sues For Lawyer Fees, By Peter Latman (December 14, 2007, 12:18 pm).

[10] Schulman Sues For Lawyer Fees, By Peter Latman (December 14, 2007, 12:18 pm).





### Foul Mouth Remke's
### Bar – LIP & Inc Business

"[Price Up or] drops. [CEo] Insiders trading. A revelation of bad news. You're not going to have that and come up dry. It's not going to happen."

### Bully Mel Wiess & Bill, Verbatim

But Lerach was also a bully. He would scream at defendants in settlement meetings, making vituperative threats to bankrupt their company and go after their personal assets. "I'm going to take away <u>your fucking condo in Maui</u>!" he told one during a typical tantrum. "<u>I'm going to take away every penny you own</u>!" On another occasion he interrupted a defense lawyer trying to make the case for <u>his clients' innocence</u>. "This is just so irritating!"[1]

"You can <u>always find a document to incriminate them [the Bar]</u>," he says.[2]

(<u>"I have the greatest practice of law in the world,</u>" Lerach [and all other leads] once boasted. "I have no clients.") .[3]

He said, 'Lemme tell you what.  I'm going ... after this company, <u>I'm going to destroy this company</u>, I'm going to take <u>everything they own</u>, I'm going to [legally] burn it to the ground unless you settle.' Then he looked <u>at his watch and said, 'I gotta go.'</u> "

Thanks to such tactics, Milberg Weiss' corporate defendants have paid out $45 billion in judgments and settlements. But critics claim that when Weiss and Lerach trained their sights on <u>Silicon</u> Valley in the early 1990s, <u>they extorted</u> millions <u>in phantom damages</u> from an industry <u>defined by its volatility</u>.[4]

### About IT, Conseulo, Torrez, Chessler, M. Real
### Weiss's & Bills & Max Coffee Berger, Verbatim

Lerach [Mel, Len Simon, Rob Walner & Mel Wiess, e.g.] divided the pie however [t]he[y] wanted--and firms claiming similar hours sometimes got widely disparate fees. Though Lerach was regularly doling out millions of dollars, the <u>subordinate firms were not allowed to know</u> how much anyone else was being paid.[5]

Still, no one left at Coughlin will pursue them with <u>quite the panache, shameless hostility, and populist anger of Bill Lerach.</u>[6]

"This whole conspiracy <u>corrupted the law</u> ... and it <u>corrupted it in the most evil way</u>," U.S. District Judge John Walter said during the hearing.[7]

---

[1] http://users.wfu.edu/palmitar/Courses/SecReg-Palmiter/Handout/Articles/Elkind-Lerach-King-Dead.htm
[2] http://money.cnn.com/magazines/Fortune/fortune_archive/2000/09/04/286801/index.htm
[3] http://money.cnn.com/magazines/Fortune/fortune_archive/2000/09/04/286801/index.htm
[4] http://www.slate.com/id/2188147/
[5] http://money.cnn.com/magazines/Fortune/fortune_archive/2000/09/04/286801/index.htm
[6] http://www.slate.com/id/2188147/
[7] http://www.rapidcityjournal.com/articles/2008/02/11/ap/business/d8uod4po4.txt







Polly Anna Cooper
23835 Foxwood Court
Valencia, California 91355

August 20, 2008

Senator Barbara Boxer
312 N. Spring Street,
Suite 1748
Los Angeles, CA 90012

Senator Dianne Feinstein
United States Senator
One Post Street
Suite 2450
San Francisco, Calif. 94104

Re:   Authorization, Current Intel & Thank You

Greetings Honorable Senator Feinstein & United Guardian Team:

Today, twelve days later, I received your 08-08-08 letter to me, which I very much appreciate.  This is a brief cover follow up and response, as requested.

First, thank you for acknowledging that the Top Executive of CA (Arnold) is not the proper authority to resolve the matters presented.  I appreciate that you and your team are personally taking over the investigation oversight.  About that specifically, you wrote and requested from me, verbatim:

[T]o begin my inquiry, I need you to send in a Casework **Authorization** form (attached).

As requested, **I have signed** a form authorizing you to begin your inquiry and am sending it to your other office, per your instruction.

Second, about the requested authorization, I thank you for respecting our privacy rights (4th Amen).  Unfortunately, based on some current filings by, e.g., **Gary E. Mason** of the Mason Law Firm **in D.C.**, that tort **duty and respect seems to be lacking** by the other branch leaders in our current administration.[1]

Third, to supplement our prior briefings to you, we have enclosed **a second CD** with additional and current investigation and verification materials from some other fields that may be of interest to you.  Attached are hard copy highlight cover page introductions to assist.[2]

Fourth, I appreciate that you "understand my concern" and are doing "all you can to assist."  You, Senator Feinstein, based on your acknowledgement and action, in my view, rise above all others in your earned office of trust.

Last, as requested, I shall keep you personally informed of the current "IT" files and matters presented to me, which I have been studying and am privy to.

Warmest personal regards,

Polly Anna Cooper

---

[1] http://www.masonlawdc.com/main.php?tN=currentCases&pageName=Current%20Cases
[2] Specifically, I direct your attention to the letter dated 08-19-08 to Mr. James Comey, with links.



EXHIBIT A PAGE   000000037

8-27-08

Code ] O.B.J. 9/03/08 ~ 8

Reformulated Gasoline (RFG) Antitrust & Patent Litigation Administrator
c/o Complete Claim Solutions, LLC, PO Box 24750, West Palm Beach,
Fl 33416

RECEIVED
SEP 0 2 2008

I tried to phone the toll free number listed 1-888-356-0253; and it said for ~~~~~
only; and would not let me speak to anyone on how to proceed with my objection/s.

Therefore I will continue by saying: I object to the part of no money paid to
consumers. I am a consumer and would like to get my share; if there is money paid
out. So I think that means, under my legal rights: "If you stay in the settlement, you
may object to all or part of it by November 7, 2008. The detailed notice explains how
to yourself or object. You can read or get a copy of the notice as outlined below."
"The Court will hold a hearing in this case on November 24, 2008, to consider
whether to approve the settlement. It will also consider a request by the lawyers
representing all Class Members for an award of attorneys' fees of up to one-third of
the settlement fund as well as their costs and expenses. The fees and expenses are for
investigating the facts, litigating the case, and negotiating the settlement. You may
as to appear at the hearing, but you don't have to."

I don't want to appear; but I think that fees are excessive.

Nancy Leras

Nancy Leras

P.O. Box 368, Monte Rio,
Ca., 95462

DIANNE FEINSTEIN
CALIFORNIA

COMMITTEE ON APPROPRIATIONS
COMMITTEE ON THE JUDICIARY
SELECT COMMITTEE ON INTELLIGENCE
RULES AND ADMINISTRATION

## United States Senate    CHASE

WASHINGTON, DC 20510-0504

http://feinstein.senate.gov

August 8, 2008

*Second notice mailed 9/25/08*

Mrs. Polly Anna Cooper
25835 Foxwood Ct
Valencia, California 91354

Dear Mrs. Cooper:

Thank you for the update on your case. I understand your concern, and I will try to do all that I can to help. However, before I can begin my inquiry, I need you to complete and send in a Casework Authorization Form (attached). Please send this information to me at my San Francisco office (address below). As soon as we receive it, we will go to work on your case.

I look forward to hearing from you in the future. Thank you for contacting my office, and I hope to be of assistance.

With warmest personal regards.

Sincerely,

*[signature]*

## United States Senate

SENATOR DIANNE FEINSTEIN
ONE POST STREET
SUITE 2450
SAN FRANCISCO, CA 94104

*[signature]*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

BAR

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

FIRST NAME LAST NAME
NO ALL CAPS

**DEFENDANTS**

CRUZ BUSTAMONTE
ALL CAP LETTERS

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Pro Per

Attorneys (If Known)

GIBSON DUNN

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No   **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

SEE ATTACHED EXHIBITS

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Action | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

EXHIBIT A PAGE __000000040

FAX - 213 - 765 - 1383
Sent 1-14-04 Gary J. Bonas II

TO: CHARLES MURRAY, ST. BAR, INC

FROM: GARY BONAS II
NIC-NAME CASH

RE: Your Aiding & Abbetting
XD P.O. IN QUEST OF
ADULT KidNAPPING TO
VIOLATE - Abridge = Speech
AMEN #1
OMEN PROTECTION

8 - PAGES
Cover Included
D-DRAFT

CC: MY COUSIN ESQUIRES
& Perry S. Hughes
at Cox, CASTLE & NICHOLSON, LLP
310-277-7889

EXHIBIT A PAGE  000000041

Robert E. Fuller
TEXACO INC.
10 Universal City Plaza
Universal City, CA 91608-1006
Telephone: (818) 505-2000
Facsimile: (818) 505-3079

Co-Counsel for Defendant-Appellant
TEXACO, INC.

Charles H. Samel
Dale J. Giali
HOWREY & SIMON
550 So. Hope St., #1400
Los Angeles, CA 90071
Telephone: (213) 892-1800
Facsimile: (213) 892-2300

Co-Counsel for Defendant-Appellant
TEXACO, INC.

Alan M. Grimaldi
HOWREY & SIMON
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-7151

Co-Counsel for Defendant-Appellant
TEXACO, INC.

Peter H. Benzian
John J. Lyons
LATHAM & WATKINS
701 "B" St., #2100
San Diego, CA 92101-8197
Telephone: (619) 236-1234
Facsimile: (619) 696-7419

Counsel for Defendant-Appellant
TOSCO CORPORATION

Maxwell Blecher
Harold Collins
BLECHER & COLLINS
611 W. Sixth Street, 20th Floor
Los Angeles, CA 90017

Co-Counsel for Defendant-Appellant
ULTRAMAR CORPORATION

Timothy R. Thomas
Senior Deputy General Counsel
Unocal Corporation
2141 Rosecrans Avenue
El Segundo, CA 90245
Telephone: (310) 726-7600
Facsimile: (310) 726-7873

Co-Counsel for Defendant-Appellant
76 PRODCUCTS COMPANY (UNOCAL
CORPORATION)

Ernest I. Reveal, III
Holly A. H. Williams
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
600 Anton Blvd., Suite 1600
Costa Mesa, CA 92626-7147
Telephone: (714) 540-6200
Facsimile: (714) 545-6915

Co-Counsel for Defendant-Appellant
76 PRODUCTS COMPANY (UNOCAL
CORPORATION)

3

**United States Senate**

WASHINGTON DC 20510-0504

August 8, 2008

*Second notice mailed 7/25/08*

Mrs. Polly Anna Cooper
23835 Foxwood Ct
Valencia, California 91354

Dear Mrs. Cooper:

Thank you for the update on your case. I understand your concern, and I will try to do all that I can to help. However, before I can begin my inquiry, I need you to complete and send in a Casework Authorization Form (attached). Please send this information to me at my San Francisco office (address below). As soon as we receive it, we will go to work on your case.

I look forward to hearing from you in the future. Thank you for contacting my office, and I hope to be of assistance.

With warmest personal regards.

Sincerely,

*Diane Feinstein*

**United States Senate**

SENATOR DIANNE FEINSTEIN
ONE POST STREET
SUITE 2450
SAN FRANCISCO, CA 94104

**EXHIBIT A (Part 3 of 3)**



**DORRANCE PUBLISHING CO. INC.** ⸻01 Smithfield Street · Third Floor · Pittsburgh, PA 15222
412/288-4543 · FAX 412/288-1786

December 27, 2006

Gary Bonas
26255 Bungalow Ct.
Valencia CA 91355

Dear Gary:

Dorrance Publishing Co., Inc. is happy to receive manuscripts written by both published and unpublished authors. Perhaps you have one and are now looking for a subsidy publisher. If that is the case, we would be interested in reading it.

The Dorrance name has been associated with a tradition of quality subsidy publishing since 1920. To provide you with more information, we are enclosing a copy of our brochure, *Author's Guide to Subsidy Publishing*. The brochure outlines our publishing programs, including the manner in which we mechanically edit, design, produce, and promote our books.

At Dorrance Publishing, we take great pride in the personal relationships that we develop with our authors. For over 85 years, our authors have benefited from our traditional, full-service publishing process that leads to a quality book. Yet, Dorrance could not carry on the tradition of quality subsidy book publishing associated with its name since 1920 without a forward-looking attitude. We have made a commitment to keep up with the rapid technological changes that have been occurring in the publishing industry as well as in e-commerce. For example, to our knowledge, we are the only full-service subsidy publisher to offer our authors the opportunity for simultaneous publication in bookstore quality traditional format, and also in an on-line electronic format (e-book).

When you send us your manuscript, we will go over it and get back to you within 21-30 days with our response. There is no cost or obligation for this service. Completed manuscripts may be sent to me in a digital format as an e-mail attachment at dbraun@dorrancepublishing.com or on an IBM-compatible disk. If you choose to submit your manuscript in this format, please save the program in a common word processing program such as Microsoft Word for Windows or Wordperfect. If your completed manuscript is less than 50 pages, you may choose to fax it to my attention at (412) 338-0427.

If you have any questions or concerns before you send us your manuscript please feel free to e-mail me at dbraun@dorrancepublishing.com or call me at 800-695-7654. We look forward to hearing from you and, of course, to examining your manuscript.

Sincerely,

David P. Braun
Author Relations Representative





Proof Of Service

In Re Reformulated Gasoline (RFG, MDL Case No. 05-1671 CAS (VBKx)

I Pollyanna Cooper [Bernardino] swear under penalty of perjury that today – 11-07-08 – I, being over 18, personally dropped, by U.S. Postal Road Mail, **our 41 (Qui Tam) "IT"** page briefing to the following, among a litany of others - Countrywide:

Judge Christina A. Snyder
Att. Clerk of the Court
Central District of California
312 N. Spring St.
Los Angeles, CA 90012

Hon. Edward A. Infante (Ret.)
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111

FINKELSTEIN THOMPSON LLP
L. Kendall Satterfield
1050 30th Street, N.W.
Washington, DC 20007
Telephone: (202) 337-8000

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS, LLP
Michael Buchman
100 Park Avenue
New York, NY 10017

Beau & Hunter Biden
Oldaker, **Biden** & Belair, LLP
818 Connecticut Avenue N.W.
Suite 1100
Washington, DC 20006

KIRBY McINERNEY LLP
Beverly Tse
825 Third Avenue
16th Floor
New York, NY 10022

BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO
Joseph J. Tabacco, Jr
425 California Street, Suite 2100
San Francisco, CA 94104

JONES DAY
Philip E. Cook
jcmurray@jonesday.com
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Date: 11-78-08

By: *Pollyanna Cooper Bernd*
Pollyanna Cooper Bernardino

Hon. Edward A. Infante (Ret.) is known for his ability to mediate complex cases involving a wide range of issues. A former Chief Magistrate Judge of the U.S. District Court, Northern District of California, Judge Infante has more than **30 years of dispute resolution** experience. He has particular expertise in complex business litigation, securities class actions, securities, employment, intellectual property, and antitrust cases.

- Served as Special Master in several complex federal cases; Authored Chapter 53, entitled "Masters," in Moore's Federal Practice (copyright 1997) -- the chapter discusses the appointment and procedures of Special Masters.[1]

- '07 Under Reported Revenue: ExxonMobile (404.552 Billion), Chevron (220.904 Billion) Shell (355.782 Billion) Conco Phillips (188.52 Billion) = 1,169.785 Trillion
- (Chevron is one of the world's six "supermajor" oil companies)

---

[1] http://www.jamsadr.com/neutrals/Bio.asp?NeutralID=1659



EXHIBIT A PAGE   000000046



Beau

Biden is a member of the <u>Delaware Army National Guard</u>, and serves as a <u>Captain</u> in the <u>Judge Advocate General's Corps</u> as part of the 261st Signal Brigade in <u>Smyrna</u>.[9][10] In August 2007, he received notice that his unit would be deployed to Iraq in 2008. <u>He was deployed on October 3, 2008</u>, the day after his father participated in the campaign's only vice presidential debate. His father is on the record as saying, "I don't want him going. But I tell you what, I don't want my grandson or my granddaughters going back in 15 years, and so <u>how we leave makes a big difference."</u>[2]

### Special Training

In addition to being licensed [as an] attorney <u>in any state or territory of the U.S., all military attorneys undergo specialized training to qualify as judge advocates</u>, allowing them to act as trial or defense counsel at military courts-martial. Specialized training takes place at ... military law centers.[3]

The ninth commandment - <u>Exodus</u> <u>20:16</u>: "You shall not give false testimony against your neighbor." In court, false testimony is called perjury and is punishable by law. Our testimony, whether before a judge or in <u>the courtroom of life</u>, should be true and accurate -- free of false information.

If you bear false witness against your neighboring country in order to justify attacking and mass [libeling, slandering and financially American's] murdering men, women and children, it is that you have <u>violated both the sixth and the ninth</u> Commandments.[4]

"<u>I may err in my measures</u>, but <u>never shall [I] deflect</u> from <u>the intention to fortify the public liberty by every possible [lawful] means</u>, and to put it out of the power of the few to riot on the <u>labors of the many</u>." --Thomas Jefferson to John Tyler, 1804. ME 11:33

<u>Article 1 Section. 6.</u> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of <u>the Treasury</u> of the United States. They shall in all Cases, <u>except Treason</u>, <u>Felony and Breach</u> of the Peace, be <u>privileged from Arrest</u> ....

<u>Article 2 Section. 4.</u> The President, Vice <u>President and all civil Officers</u> of the United States, shall be removed [Kerry & McCain Bush Disributer AZ] from Office on <u>Impeachment for</u>, and Conviction of, Treason, Bribery, or other <u>high Crimes</u> and Misdemeanors.

[<u>So you know</u>] <u>I exercised, on their behalf</u>, a right given by nature to all ..., individual or associated, that <u>of rescuing their own</u> [money &] property wrongfully [CEO – Oil Gas] taken."[5]



<u>http://www.sap.com/business_management_software/price_management.epx</u>

---

[3] http://en.wikipedia.org/wiki/Beau_Biden#Military_service
[3] http://en.wikipedia.org/wiki/Judge_Advocate_General%27s_Corps#Special_training
[4] http://www.udarreli.com/war_murder_false_witness.html
[5] --Thomas Jefferson to W. C. C. Claiborne, 1810. ME 12:383



Gary Joseph Bonass II
26255 Bungalow Court
Valencia, California 91355

**Fee Award Application**
**Based On** Qui Tam Statute

As a correction to my co-counsel's mistaken fee application for about 18 million for not, I present the following:

Based on **law & fact intelligence** presented on the enclosed CD, Plaintiff's counsel respectfully requests the court to immediately award a partial fee payment of **the owed minimum of 15%** of the "total recovery" pursuant to **the "qui tam" statute**, as both **the whistleblowers & private attorney general's prosecuting** the case, on behalf of the "government," aka, the defined **"We The People" class**, who are the government in our democracy, **by definition:**

Democracy Class
We The People Rule

The information brought & prosecuted **directly led** to the subject recover.

**It is 30% Capped**

The sole issue the court has before it now is whether the class (We The People) are owed competent counsel and compensation.

**Brief Objectors Reminder**

With respect to this honorable court's We The People Class Guardian Role, we remind of the following truisms:

A)   The statute's mandated **15% does not provide for objector comment;**
B)   Under IT, objector comment **on between 15-30% issue is prudent;** &
C)   The objectors have **edified the court on nothing substantive.**

**15-30% Discretionary Introduction**

In considering **the 15-30% award**, the court should indeed consider the mammoth risk the lead **plaintiff's took** in prosecuting this case. Those Herculean risk factors included:

A)   The defense bar mafia's deep client pockets buying off judges to kick the case altogether or structure a full court defense bribe brought victory, gutting **all facts & rules**, like Mr. Greg Stone did in the McCampell v. Ralph case & like Latham & Watkins did in the Chicago Jewel case. All of which, based on our controlling direct law & fact proof, are A-Z retainers in restraint of Trade, full court frivolous, fraudulent & crossing every single rule of ethics taught.

Respectfully,

Gary Joseph Bonas II          *GB*          11-07-08



8-21-08

code   O.B.J.  9/03/08   s.s.

Reformulated Gasoline (RFG) Antitrust & Patent Litigation Administrator
c/o Complete Claim Solutions, LLC, PO Box 24750, West Palm Beach,
Fl 33416

RECEIVED
SEP 0 2 2008

I tried to phone the toll free number listed 1-888-356-0253; and it said for ▓▓▓▓
only; and would not let me speak to anyone on how to proceed with my objection/s.

Therefore I will continue by saying: I object to the part of no money paid to
consumers. I am a consumer and would like to get my share; if there is money paid
out. So I think that means, under my legal rights: "If you stay in the settlement, you
may object to all or part of it by November 7, 2008. The detailed notice explains how
to yourself or object. You can read or get a copy of the notice as outlined below."
"The Court will hold a hearing in this case on November 24, 2008, to consider
whether to approve the settlement. It will also consider a request by the lawyers
representing all Class Members for an award of attorneys' fees of up to one-third of
the settlement fund as well as their costs and expenses. The fees and expenses are for
investigating the facts, litigating the case, and negotiating the settlement. You may
as to appear at the hearing, but you don't have to."

I don't want to appear; but I think that fees are excessive.

Nancy Leras

Nancy Leras

P.O. Box 368, Monte Rio,
Ca., 95462

November 6, 2008

Reformulated Gasoline Antitrust & Patent Administrator
c/o Completed Claims Solutions, LLC
PO Box 24750
West Palm Beach, Florida 33416



Dear Claims Administrator:

On behalf of myself and my wife, Lori Reimers, I object to the settlement of the litigation
entitled: In Re Reformulated gasoline (RFG) Antitrust & Patent Litigation, MDL Case
No. 05-1671 CAS (VBKx).

My address and phone are as follows:

David & Lori Reimers
2726 Carnelian Circle
El Dorado Hills, CA 95762
(916)933-4762

Both of us purchased CARB-compliant summertime reformulated gasoline in California
throughout from January 1995 to and including august 11, 2005. We strongly feel that
refunds, however nominal, should be provided to us gas purchasers as opposed to
donating the money to research unproven technologies. It was our money that was
wrongly taken in the first place, we deserve that money back.

We want to opt out of the class.

Sincerely,

David Reimers

Lori Reimers

Return:
2726 Carnelian Circle
El Dorado Hills, CA 95762

QUALITY
IS OUR BUSINESS

UNITED STATES POSTAGE
$00.420
NOV 06 08
MAILED FROM ZIP CODE 95630

P83 4976 48
95630

117
57005
1388

3341684750 8099

Reformulated Gasoline Antitrust & Patent
Administrator
c/o Completed Claims Solutions, LLC
PO Box 24750
West Palm Beach, Florida 33416

EXHIBIT A PAGE    000000051



1   Steve A. Miller (State Bar No. 171815)
    Email: sampc01@gmail.com
2   Steve A. Miller, PC
3   1625 Larimer Street, No. 2905
    Denver, CO 80202
4   Tele: 303-892-9933
    Fax: 303-892-8925
5

6   Attorney for Objector Leslie Yagar

7

8

9

10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA

12

13  | IN RE: | MDL CASE NO: 05-1671 CAS (VBKx) |
14  | REFORMULATED GASOLINE(RFG) ANTITRUST AND PATENT LITIGATION, | |
15  | | OBJECTION TO PROPOSED SETTLEMENT |
16  | | |
17  | This Document Relates To: | Date:   November 24, 2008 |
18  | ALL ACTIONS | Time:   10:00 a.m. Judge:  Christina A. Snyder |
19  | | |

20

21

22

23

24

25

26

27

28

1   COMES NOW Leslie Yagar ("Objector"), by and through the undersigned attorney and

2   files this Objection to the Proposed Settlement in this matter. In support thereof, Objector states

3   as follows:

4   1.      Your Objector who has resided in the State of California since 1996 and has regularly

5

6   operated a motor vehicle and purchased gasoline in the State of California during the period

7   commencing January 19, 1995 through and including August 11, 2005. Objector is a Class Member

8   as a result of being a consumer who regularly purchased CARB-compliant summertime

9   reformulated gasoline in the State of California during the class period. For purposes of this

10  Objection the address and telephone number of the Objector are in care of the undersigned.

11  2.      The Proposed Settlement is intended to benefit all Class Members, consistent with Federal

12  Rules of Civil Procedure and applicable law. Thus any such settlement must be fair, adequate and

13  reasonable to those Class Members.

14

15  3.      The Court has preliminarily approved an agreement between Defendant and class

16  representatives to settle this matter (the "Proposed Settlement").

17  4.      Objector has become sufficiently acquainted with the Proposed Settlement and believes, as

18  well as alleges, that the Proposed Settlement is not fair, adequate or reasonable, all of which criteria

19  are legal standards to be applied by this Court in determining whether to approve the Proposed

20  Settlement as presented to the Court by adverse litigating parties. It is the duty of this Court to

21  assure itself, the class and the public that the applicable and governing criteria material to the

22  Proposed Settlement are present.

23

24  5.      Objector, through the undersigned counsel, now enters an appearance in this cause to

25  participate in further proceedings in this Court and to prosecute this action to the end purpose that

26  any settlement or resolution proposed or approved by the Court is, in all respects, fair, adequate and

27  reasonable.

28

6.    On the basis of the information ascertained from the Proposed Settlement conditionally approved by the Court, your Objector alleges that the settlement as proposed is not fair, adequate or reasonable due to the fact that by its terms the settlement provides absolutely no benefit to members of the class. The entire settlement fund is distributed only to charities and for attorneys' fees. The attorneys' fees are excessive in light of applicable 9th Circuit and California State Law. Furthermore, the charities selected are not appropriate in that the wrongs complained of deal with alleged antitrust violations that resulted in higher price for gasoline to consumers in the State of California while the charities selected are involved in attempts to create better fuel efficiency and/or cleaner fuel products. Under established principals wherein *cy pres* funds are utilized as a part of a class action settlement, any charity receiving funds must have a rational relationship with regard to remedying the alleged wrong or with regard to the damage done to the class. Any charity receiving funds as part of the recovery in this case should be charities more directly related to consumer rights, consumer advocacy and consumer education.

7.    Your Objector adopts any other bona fide Objections by other Class Members. For all the foregoing reasons, Objector respectfully submits that the terms of the Proposed Settlement are insufficient, unfair, unjust, unreasonable and inadequate to the absent Class Members.

WHEREFORE, having demonstrated the unfairness, inadequacy and unreasonableness of the Proposed Settlement, Objector requests appropriate general relief as follows:

(a.)    That the Court not approve the Settlement as proposed.

(b.)    That the Court not award the attorneys' fees as requested.

(c.)    That the Court enters such other further Orders as may be necessary and just to effect substantial justice in this cause between the parties and the absent Class Members.

## NOTICE OF APPEARANCE AND INTENT TO BE HEARD

1.     Notice is hereby given that the undersigned counsel for Objector Leslie Yagar intends to appear on behalf of said Class Member/Objector at the Fairness Hearing scheduled on November 24, 2008 at 10:00 a.m. and requests to be heard. Any presentation will take no longer than 30 minutes.

2.     For purposes of this proceeding said Class Member/Objector's address, phone number and contact information are c/o undersigned counsel.

Respectfully submitted,

_____

Steve A. Miller (State Bar No. 171815)
Attorney for Objector Leslie Yagar
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Tele: 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2008, I have forwarded a true and correct copy of the foregoing Objection and Notice of Intent to Appear via regular US mail delivery as shown below, to the following:

Clerk of the Court
District Court for the
Central District of California
312 Spring Street
Los Angeles, CA 90012
Filed by One Legal LLC

Class Counsel:

Kirby McInerney, LLP
Beverly Tse
825 Third Avenue, 16th Fl
New York, NY 10022
212-371-6600
www.kmllp.com

Finkelstein Thompson, LLP
L. Kendall Satterfield
The Duvall Foundry
1050 30th St. NW
Washington, DC 20007
202-337-8000
www.finkelsteinthompson.com

Berman DeValerio Pease Tabacco Burt & Pucillo
Joseph J. Tabacco, Jr.
Christopher Heffelfinger
425 California St, St 2100
San Francisco, CA 94104
415-433-3200
www.bermanesq.com

Pomerantz Haudek Block Grossman & Gross, LLP
Michael Buchman
J. Douglas Richards
100 Park Ave
New York, NY 10017
212-661-1100
www.pomerantzlaw.com

Counsel for Defendants:

Jones Day
Philip E. Cook
Jason Murray
555 South Flower St, 50th Fl
Los Angeles, CA 90071

_____
Steve A. Miller

1 | Steve A. Miller (State Bar No. 171815)
Steve A. Miller, PC
2 | 1625 Larimer Street, No. 2905
Denver, CO 80202
3 | Ph# 303-892-9933
Fax: 303-892-8925
4 |

5 |

6 | Attorney for Objector Leslie Yagar

7 |

8 |

9 |

10 | UNITED STATES DISTRICT COURT
11 | CENTRAL DISTRICT OF CALIFORNIA

12 |

13 |

| IN RE: | MDL CASE NO: 05-1671 CAS (VBKx) |
|---|---|
| REFORMULATED GASOLINE(RFG) ANTITRUST AND PATENT LITIGATION, | OBJECTOR LESLIE YAGAR'S BRIEF IN SUPPORT OF OBJECTION |
| This Document Relates To: | Date: November 24, 2008 Time: 11:00 a.m. Judge: Christina A. Snyder |
| ALL ACTIONS | |

**OBJECTOR LESLIE YAGAR'S BRIEF IN SUPPORT OF OBJECTION**

COMES NOW, Leslie Yagar, a non-named class member and Objector in this cause, and files her Brief in Support of Objection:

**I.**

**OVERVIEW**

1    Your Objector has filed her Objection requesting that this Court not approve the

2    Proposed Settlement. Your Objector's primary contentions are that the requested attorneys' fees

3    are excessive and should not be allowed and that the charities selected to be the recipient of the

4    cy *pres* fund are not appropriate beneficiaries in that there is no rational basis between the

5    damages asserted with regard to class members and the charities selected. This brief is submitted

6    to address the attorneys' fee issue, but should not be construed as a waiver by your Objector as

7

8    to any other issues raised in her Objection.

9                                    **II.**

10           **UNDER APPLICABLE NINTH CIRCUIT PRECEDENT**
             **THE CLAIMED ATTORNEYS' FEE IS EXCESSIVE**
11

12           The premise of Plaintiff's claim in this case is that the Defendant Unocal, convinced the

13   California Air Resources Board ("CARB") to adopt Unocal's proprietary formula for

14

15   "summertime reformulated gasoline" and thereafter wrongfully charged competing oil

16   company's royalties for using its formula. This resulted in all consumers of gasoline in the State

17   of California paying higher prices for compliant gasoline. While the Notice of Proposed

18   Settlement states that the parties have not agreed on the total amount of damages to California

19   consumers, it is reasonable that over the course of the ten-year class period (and in light of the

20

21   agreed to Settlement Fund) that the actual damages are in the 100's of millions of dollars.[1]

22           Class counsel has negotiated a settlement consisting of a $48,000,000.00 fund, which

23   will be utilized solely for payment to various charities and the payment of attorneys' fees. There

24   is no injunctive relief as part of the settlement and therefore Defendant is free to continue to

25   engage in its unlawful conduct. The settlement provides no monetary relief or claims process for

26

27   _____
     [1] Your Objector would note that at the Settlement Hearing it is incumbent on the settling parties to present evidence
28   of the range of potential damages for the Court's consideration in its analysis as to whether the settlement is fair,
     reasonable and adequate.

Class Members. Your Objector is aware that Class Counsel will argue that Class Members receive a tangential benefit as a result of the *cy pres* fund, however, the reality is that Class Members are receiving no benefit whatsoever in exchange for a full release as to the wrongdoings of Defendant. Despite this result Class Counsel is seeking a fee well in excess of the guidelines and precedent of existing Ninth Circuit authority. Where the only individuals who are receiving cash from the Settlement Fund are the attorneys, there can be no doubt that the greatest level of scrutiny should be exercised by this Court. Furthermore, greater scrutiny is required where the Defendant has agreed not to challenge the requested fee award.

In *Vizcaino v. Microsoft*, 290 F.3d 1043, 1052 (9th Cir.2002) ("Rubber-stamp approval, even in the absence of objections, is improper")the Ninth Circuit stated, "...the Court must closely scrutinize the fee application and determine an appropriate fee award based on the circumstances of this case." See also *Zucker Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir.1999) ("In a class action, whether the attorneys' fee comes from a common fund or is otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper"); Fed R.Civ.P. 23(b), Advisory Committee Notes, 2003 Amendments ("In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections the court bears this responsibility").

The Ninth Circuit has observed that a fee award of 25% is the proper benchmark for fees in common fund cases. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate. *Id.* (emphasis added)

1    Probably the most cited case with regard to the awarding of attorneys' fees in class

2  actions in the Ninth Circuit is *Vizcaino, supra*. In *Vizcaino* the court noted that in common fund

3  cases the court has discretion to award fees based on a lodestar or percentage-of-the-fund

4  method. *Vizcaino*, at 1047. The only requirement is that the fee be reasonable under the

5  circumstances. *See Powers v. Eichen* 229 F.3d 1249, 1256 (9th Cir. 2000). *Vizcaino* noted that in

6  determining whether to use the 25% benchmark or some higher or lower percentage, the Ninth

7  Circuit has considered various factors – specifically, (a) whether exceptional results were

8  achieved, (b) degree of risk for Class Counsel, (c) whether there were benefits to the class

9  beyond the immediate generation of a cash fund, (d) the range of fee awards for common funds

10  of comparable size and (e) Class Counsel investment in the case and their foregoing of other

11  work. *Vizcaino*, at 1048-50. *Vizcaino* also held "...selection of the benchmark or any other rate

12  must be supported by findings that take into account all of the circumstances of the case." *Id. at*

13  *1048.* "[T]he district court must specify its reasons for approving a particular attorney's fee

14  award so that we may conduct meaningful review." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th

15  Cir.2000). When a court departs from the 25% benchmark, "it must be made clear...how it

16  arrives at the figure ultimately awarded." *Id.* Not only must the district court list the factors

17  considered, it must also "indicate how those different considerations should be weighed."*Id. at*

18  *1257.*

19    In reviewing the five key factors referred to in *Vizcaino* the common sense understanding

20  would be that the foundation for an award of attorneys' fees and the most critical factor is the

21  results achieved/benefit to the class. In the present case there is no fund or claims procedure that

22  will directly benefit the class and there is no injunctive relief which will alter the Defendant's

23  conduct. These two factors mitigate so heavily against the Class Counsel that this Court cannot

1    justify the 25% benchmark. While *Vizcaino* affirmed an award just 3% higher than the

2    benchmark, the Court specifically found that

3    > counsel pursued [the] case in the absence of supporting precedents, in the face of
4    > agreements signed by the class forsaking benefits... It was "extremely risky", involved
     > two successful appeals to the Ninth Circuit, and "clarif[ied] the law of temporary worker
5    > classification." *Id.* at 1048-1049.

6    More importantly, in *Vizcaino* the entire settlement fund (after deducting attorneys' fees)

7    was actually distributed to Class Members and not to some unrelated third party. Furthermore,

8    Class Counsel was also successful in negotiating an agreement whereby Microsoft changed its
9
     staffing and worker classification practices resulting in an additional significant benefit to Class
10
11   Members. In *Vizcaino* the Court found the overall result to be "exceptional" thereby justifying

12   the small percentage increase over the 25% benchmark(emphasis added). The result to the Class

13   Members in the present case in no way compares to the "exceptional" results for Class Members

14   in *Vizcaino*.

15   In the recent case of *Wilson v. Airborne, Inc.* 2008 WL 3854963 (C.D. Cal.) a class
16
     action was filed alleging that the Airborne nutritional supplement had been promoted utilizing
17
18   misleading and deceptive advertising. The Plaintiffs were successful in negotiating a

19   $23,000,000.00 non-reversionary settlement fund to be distributed to Class Members (after

20   deduction of attorneys' fees and expenses) who filed claims. Any non-utilized funds were to be

21   distributed to certain non-profit organizations. Although injunctive relief was not part of the

22   settlement, the parties submitted evidence to the court that the Defendant was on the verge of

23   reaching an injunction agreement with the Food and Drug Administration. Class Counsel sought
24
     an award of 25% of the settlement fund which equaled $5,812,500.00. The Court reviewed the
25
26   holdings of *Vizcaino* and its progeny and determined, based primarily on the relatively early

27   stage of the case when settlement occurred, that the court would exercise its discretion and

28

determine the fee based on the lodestar method with an appropriate multiplier. The court noted that the lodestar method can be necessary in order to prevent a "windfall" award citing *In re Washington Pub. Power Supply Sys. Sec. Litig.* 19 F.3d 1298 (9th Cir.1994). Accordingly, the court thereafter awarded the lodestar with a multiplier of two for a total fee of $3,459,946.00 or just 14.8% of the Settlement Fund. What is most important about the *Airborne* case is that the Court specifically held "..Though the result is "*extraordinary*" in terms of the total value of the Settlement Fund, *it is not apparent that those funds will redress any injury keenly felt by Class Members. Id* at \*12 (emphasis added). The court's final conclusion in *Airborne* was that a fee equal to 14.8% of the Settlement Fund was "...a percentage the court also finds to be reasonable." *Id* at \*12. In comparing *Airborne* to the present case *Airborne* had a direct benefit available to the class and as a result of the federal injunction that occurred simultaneously the Defendant's conduct was altered. The benefit in the present case results in no distribution to Class Members and there is no injunctive relief involved in the settlement. Certainly to award the full 33% would create an even more significant windfall for Class Counsel in the present action than the potential windfall in *Airborne*.

In the recent case of *Chiaramonte v. Pitney Bowes, Inc.* 2008 WL 510765 (S.D. Cal.) the district court for the Southern District of California after reviewing the *Vizcaino* criteria in detail, determined that Class Counsel's fee request equal to one-third of a Settlement Fund of $1,100,000.00 could not be supported and reduced the fee to the 25% benchmark. The Court specifically noted that while ".... a 'fair result' was achieved for the Plaintiff Class, it can hardly be said that the settlement was 'exceptional.' The *Pitney Bowes* Court went on to note that, although Class Counsel asserted that the case presented far more risk than the usual contingent fee type of case, such assertion was supported by little more than conclusory statements about the expense, time and risk inherent in all class action litigation *Id* at \*7. The Court also held

that even though the requested fee of one-third of the fund comported with the "lodestar cross check" on reasonableness of the fee request approved in *Vizcaino*, Class Counsel had still not provided a good reason to allow a fee beyond the 25% benchmark. *Id* at *7 -*8.

## III.

## CONCLUSION

While the Ninth Circuit has generally allowed either the lodestar (with appropriate multiplier) or the percentage-of-the-fund method for calculating attorneys' fees in common fund cases, the Ninth Circuit has reiterated in numerous cases that, when determining attorneys' fees, the district court should be guided by the fundamental principal that fee awards out of common funds be "reasonable under the circumstances". See, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, at 1296 (quoting *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). See also, *Louis v. Starbucks, Corp.* 2008 WL 4196690 (E.D. Cal.). In the present case there is no justification for exceeding the 25% benchmark and, considering the lack of any meaningful direct benefit for class members, the fee in this case should be substantially below the full benchmark.

Respectfully submitted,

/S/ Steve A. Miller
Steve A. Miller (State Bar No. 171815)
Attorney for Objector
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November, 2008, I have forwarded a true and correct copy of the foregoing Brief in Support of Objection via electronic filing to the Court

Clerk of the Court
District Court for the
Central District of California
312 Spring Street
Los Angeles, CA 90012

Class Counsel:

Kirby McInerney, LLP
Beverly Tse
825 Third Avenue, 16th Fl
New York, NY 10022
212-371-6600
www.kmllp.com

Finkelstein Thompson, LLP
L. Kendall Satterfiled
The Duvall Foundry
1050 30th St. NW
Washington, DC 20007
202-337-8000
www.Finkelsteinthompson.com

Berman DeValerio Pease Tabacco Burt & Pucillo
Joseph J. Tabacco, Jr.
Christopher Heffelfinger
425 California St, St 2100
San Francisco, CA 94104
415-433-3200
www.bermanesq.com

Pomerantz Haudek Block Grossman & Gross, LLP
Michael Buchman
J. Douglas Richards
100 Park Ave
New York, NY 10017
212-661-1100
www.pomerantzlaw.com

1

Counsel for Defendants:

2

3    Jones Day
     Philip E. Cook

4    Jason Murray
     555 South Flower St, 50th Fl

5    Los Angeles, CA 90071

6

7                      /S/ Steve A. Miller
                      Steve A. Miller

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28